UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP GARLAND, <u>et</u> <u>al</u>.,          )
                                        )
    Plaintiffs,                     )
                                        )
    v.                              ) Civil No. 07-1641 (RWR)
                                        )
U.S. DEPARTMENT OF HOUSING &            )
URBAN DEVELOPMENT, <u>et</u> <u>al</u>.,       )
                                        )
    Defendants.                     )
_____     )


<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

    Defendants U.S. Department of Housing and Urban Development
[HUD], Alphonso Jackson, Secretary of HUD, and Margarita
Maisonet, Debarring Official for HUD, by their undersigned
counsel, respectfully move the Court, pursuant to Rule 56 of the
Federal Rules of Civil Procedure, for an order granting defendant
summary judgment on the grounds that no genuine issue of material
fact exists and defendant is entitled to judgment as a matter of
law.  In support of this motion, the Court is respectfully
referred to the accompanying statement of material facts, the
memorandum of points and authorities and the Administrative

Record.  A proposed order is also attached.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____

MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

Of Counsel:

Stanley E. Field
Office of General Counsel
U.S. Department of Housing
  & Urban Development

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
PHILIP GARLAND, et al.,        )
                               )
        Plaintiffs,            )
                               )
        v.                     )  Civil No. 07-1641 (RWR)
                               )
U.S. DEPARTMENT OF HOUSING &   )
URBAN DEVELOPMENT, et al.,     )
                               )
        Defendants.            )
_____)
```

DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Civil Rule 7(h), defendants hereby submit their statement of material facts as to which there is no genuine issue:

1.  Plaintiff Philip Garland ("Garland") was a Lancaster, Pennsylvania real estate developer and home builder.  Complaint, ¶¶ 1, 10.

2.  On March 11, 2004, a 33-count Indictment[1] was filed in the United States District Court for the Eastern District of Pennsylvania against Philip Garland and four other individuals charging them with, among other things, making false statements to HUD to obtain HUD-insured loans for the purchase of over 100 single-family homes.  AR,[2] pp. 61-100.

_____

[1] Although some documents refer to the Indictment as having 59 counts, the Indictment itself contains 33 identified counts.

[2] "AR" represents "Administrative Record."

3.    The Indictment charged that Garland and other individuals had engaged in a conspiracy to fraudulently obtain HUD mortgage insurance for numerous home purchases by submitting false statements to HUD's agents, the insured lenders.  AR, 67-69.

4.    Among other things, the alleged false statements concerned the value of the homes and the source of funds used by the buyers as their down payments.  AR, 70-72.

5.    Pursuant to a plea agreement that he entered into with the United States Attorney's Office, in March 2005 Garland pled guilty to only one of these transactions, the sale of a house in Dover, Pa.  AR, 53.

6.    Specifically, Garland agreed to plead guilty to Count 1 of the Indictment which:  "charg[ed] him with conspiracy, among other things, to make false statements to HUD, in violation of 18 United States Code, Section 371, by causing to be submitted to a lender, an agent of HUD, false statements concerning the sale of 2042 Wyatt Circle, Dover, Pennsylvania, specifically:  a) a false statement to the lender about the source of gift funds; b) a false statement on  a HUD-1 Settlement Statement; and c) a false statement on an Addendum to a HUD-1 Settlement Statement."  AR, 53.

7.  Count 1 contained the narration that, on or about May 22, 2000, Garland secretly funded the purchase of 2042 Wyatt Circle, Dover, Pennsylvania, a Garland-owned home, with an undisclosed, unlawful advance of approximately $10,326.78.  The purchase price of the home was $101,500.  AR, 90.

8.  At the direction of Judy Gemmill, a conspiring licensed mortgage broker employed by Garland, the purchaser falsely claimed she received $100 per month in child support and she, along with the father of her child, created false receipts to support the falsely claimed income.  AR, 90.

9.  Four days before closing, on May 18, 2000, conspirator Judy Gemmill also created and had executed a false gift letter claiming that the purchaser received a gift of $9,000 to assist her in the purchase of this Garland owned home.  AR, 90.

10.  On or about May 22, 2000, Garland and Judy Gemmill signed, or caused to be signed, a HUD-1 Settlement Statement for 2042 Wyatt Circle, that failed to disclose that Garland had secretly advanced to the purchaser $10,476.78.  AR, 90.

11.  As of November 2001, the purchaser was delinquent on her HUD/FHA insured loan.  In September 2002, foreclosure of the HUD/FHA loan was completed and HUD realized a loss of $57,679.81 on the transaction.  AR, 101-107.

12.   In exchange for his guilty plea, Garland agreed to a term of incarceration of eighteen months.  The plea agreement also required him to pay $1,150,000 in restitution and damages to HUD under a civil Settlement Agreement for losses it sustained as a result of the conspiracy charged in the Indictment:  "defendant Garland shall make payment of $1,150,000, a part of which payment shall constitute full restitution and a part of which payment shall constitute multiple damages and penalties under the False Claims Act."  AR, 54.

13.   This payment was to be made in acknowledgment that "HUD was a victim of the conspiracy charged in this case, that HUD has indemnified and made whole all other victims in this case and that therefore no restitution order is appropriate."  AR, 54.

14.   In the separate civil Settlement Agreement, Garland agreed to pay $1,150,000 in three scheduled installments. Payment of this amount was to "resolve any and all disputes, claims and demands, except as expressly excluded herein, that the United States may have against Garland or the Garland companies" arising from alleged fraud in 101 real estate transactions involving the sale of homes built by Garland or the Garland companies.  AR, 109-110.

15. These 101 real estate transactions were listed in an attachment to the Settlement Agreement and labeled "Attachment A." AR, 109.

16. The Settlement Agreement further stated that, "Other than such admissions as Garland makes in connection with his entry of a guilty plea pursuant to his plea agreement with the Unites States in the Criminal Action, Garland and the Garland companies deny the remaining allegations of the United States as set forth herein." AR, 109-110.

17. In consideration for Garland's agreement to pay the United States $1.15 million, it released Garland and three of his companies from "all civil monetary liability to the United States for all civil claims . . .or any other cause of action arising from the "covered conduct." AR, 110-111.

18. On March 29, 2005, Garland's plea, specifying the facts and charges he pled guilty to, was taken in open court. AR, 166-171.

19. After entering his plea, Garland was sentenced to 18 months in prison. AR, 43.

20. In notices dated April 7, 2006, Garland and his named affiliates, plaintiffs herein, were notified by HUD of their proposed indefinite debarments, based upon his conviction. AR, 1-8.

21.  Garland and his affiliates responded to the notice, requesting a hearing.  AR, 9-13.

22.  An informal hearing was held on July 20, 2006.  On August 25, 2006, HUD's Debarring Official at the time, Margarita Maisonet, issued her decision debarring plaintiffs for six years. AR, 705-708.

23.  As the basis for her decision, Ms. Maisonet found as facts, *inter alia,* that:  Garland was a real estate developer and participant in HUD programs; Garland was sentenced to 18 months in prison and 3 years of supervised release for the crimes he committed related to his company's fraudulent participation in FHA single-family home purchase transactions; Garland paid full restitution of $1,150,000, which included losses to HUD and False Claims Act claims against him; and that Garland had not participated in the FHA program since 2001.  AR, 706.

24.  On October 13, 2006, plaintiffs moved for reconsideration of the lengths of their respective debarments. They based their motion on the allegation that "the Debarring Official inappropriately, and based on no evidence, concluded that Respondents engaged in multiple fraudulent transactions." AR, 716.

25.  In her decision dated December 18, 2006, the Debarring Official denied the Plaintiffs' Motion for Reconsideration,

stating:  "They premise their argument on the Debarring
Official's determination, which refers to fraudulent
"transactions" which Respondents claim improperly goes beyond the
one transaction for which Respondent Garland was convicted.
Although the loss to HUD in the one fraudulent transaction to
which Respondent Philip Garland admitted guilt was $57,000,
Respondent Garland in a civil settlement agreement agreed to pay
$1,150,000 of reimbursement for losses in HUD's FHA program and
for potential multiple damages and penalties under the False
Claims Act.  He also agreed to 18 months of incarceration
followed by 3 years of supervised release.  These facts make it
clear that a substantial duration of debarment to protect the
Government is indicated here."  AR, 849.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

Of Counsel:

Stanley E. Field
Office of General Counsel
U.S. Department of Housing
  & Urban Development

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP GARLAND, <u>et</u> <u>al</u>.,          )
                                             )
        Plaintiffs,                          )
                                             )
        v.                                   )   Civil No. 07-1641 (RWR)
                                             )
U.S. DEPARTMENT OF HOUSING &                 )
URBAN DEVELOPMENT, <u>et</u> <u>al</u>.,     )
                                             )
        Defendants.                          )
                                             )

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants, the United States Department of Housing and
Urban Development (HUD), Secretary of HUD Alphonso Jackson, and
former Debarring Official Margarita Maisonet (collectively
referred to hereafter as the Defendants) submit this memorandum
in support of their motion for summary judgment, asserting that
there is no genuine issue as to any material fact and that
defendants are entitled to judgment as a matter of law.[1]

**<u>INTRODUCTION</u>**

Plaintiff Philip Garland, a Lancaster, Pennsylvania real
estate developer and home builder, pled guilty in March 2005 to
one count of an Indictment for conspiracy to make false
statements to HUD in violation of 18 U.S.C. § 371.  The
Indictment charged that Garland and other individuals had engaged

---

[1] Fed R. Civ. P. 56(c).

in a conspiracy to fraudulently obtain HUD mortgage insurance for numerous home purchases by submitting false statements to HUD's agents, the insured lenders.  Among other things, the alleged false statements concerned the value of the homes and the source of funds used by the buyers as their down payments.  Pursuant to a plea agreement that he entered into with the United States Attorney's Office, Garland pled guilty to only one of these transactions, the sale of a house in Dover, Pa.  After entering his plea, Garland was sentenced to 18 months in prison.  The plea agreement also required him to pay $1,150,000 in restitution and damages to HUD under a civil Settlement Agreement for losses it sustained as a result of the conspiracy charged in the Indictment.

Using his criminal conviction as a basis, HUD debarred Garland and two of his companies, the plaintiffs in this action, from participating in HUD programs for a period of six years. After exhausting their administrative remedies, plaintiffs brought this action under the Administrative Procedure Act, 5 U.S.C. §§ 702 *et seq.*, challenging not the debarment itself but its six year duration.  They assert that HUD imposed an excessively long debarment because it improperly considered Garland's payment under the Settlement Agreement as an admission

of liability for the damages that HUD suffered as a result of the conspiracy alleged in the Indictment.

As discussed below, none of the material facts in this case is in dispute.  In addition, all of the facts considered by HUD were contained in Garland's plea agreement and other court documents.  HUD's proper consideration of the facts and circumstances of Garland's conviction for conspiracy to defraud HUD, as well as factors in mitigation, led it to impose the six year debarments complained of.  The length of debarment was authorized by regulation and the decision to debar Garland and his affiliates was well-reasoned and addressed the appropriate regulatory factors.  Under these circumstances, HUD is entitled to summary judgment.

## **BACKGROUND**

### **A.  HUD's Standards For Debarment**

In order to protect the public interest, it is the policy of the Federal Government to conduct business only with responsible persons.[2]

HUD's debarment process is set forth at 24 C.F.R. § 24.800 *et seq.*  Causes for debarment are found at 24 C.F.R. § 24.800.  Subsection (a) of § 24.800 addresses convictions and civil judgments.  Causes include:  (1) commission of fraud or a

---

[2] 24 C.F.R. § 24.110.

criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; (2) violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; (3) commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; and, (4) commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects a person's present responsibility.

The Department has the burden of proving that a cause for debarment exists. "If the proposed debarment is based upon a conviction or civil judgment, the standard of proof is met."[3] Once a cause for debarment is established, the Respondent has the burden of demonstrating to the satisfaction of the Debarring Official that he is presently responsible and that debarment is not necessary.[4]

When considering an appropriate period of debarment, HUD's Debarring Official refers to the factors listed at 24 C.F.R.

---

[3] 24 C.F.R. § 24.850(b).

[4] 24 C.F.R. § 24.855.

§ 24.860 for guidance.  Those factors include, among others:
the actual or potential harm or impact that results or may result
from the wrongdoing, § 24.860(a); whether and to what extent the
respondent planned, initiated, or carried out the wrongdoing, §
24.860(f); whether the respondent has accepted responsibility for
the wrongdoing and recognizes the seriousness of the misconduct
that led to the cause for debarment, § 24.860(g); whether the
respondent has paid or agreed to pay all criminal, civil and
administrative liabilities for the improper activity, including
any investigative or administrative costs incurred by the
government, and has made or agreed to make full restitution, §
24.860(h); and whether the respondent has cooperated fully with
the government agencies during the investigation and any court or
administrative action, § 24.860 (i).  In determining the extent
of cooperation, the Debarring Official may consider when the
cooperation began and whether the respondent disclosed all
pertinent information known to him or her, § 24.860 (i).

**B.  Garland's Conviction**

On March 11, 2004, a 33-count Indictment[5] was filed in the
United States District Court for the Eastern District of
Pennsylvania against Philip Garland and four other individuals

---

[5] Although some documents refer to the Indictment as having 59
counts, the Indictment itself contains 33 identified counts.

charging them with, among other things, making false statements
to HUD to obtain HUD-insured loans for the purchase of over 100
single-family homes.  Garland subsequently entered into a Guilty
Plea Agreement wherein he agreed to plead guilty to Count 1 of
the Indictment which:

> charg[ed] him with conspiracy, among other things, to
> make false statements to HUD, in violation of 18 United
> States Code, Section 371, by causing to be submitted to
> a lender, an agent of HUD, false statements concerning
> the sale of 2042 Wyatt Circle, Dover, Pennsylvania,
> specifically:  a) a false statement to the lender about
> the source of gift funds; b) a false statement on  a
> HUD-1 Settlement Statement; and c) a false statement on
> an Addendum to a HUD-1 Settlement Statement.[6]

 More specifically, Count 1 charged that, on or about
May 22, 2000, Garland secretly funded the purchase of 2042
Wyatt Circle, Dover, Pennsylvania, a Garland-owned home,
with an undisclosed, unlawful advance of approximately
$10,326.78.  The purchase price of the home was $101,500.[7]
At the direction of Judy Gemmill, a conspiring licensed
mortgage broker employed by Garland, the purchaser falsely
claimed that she received $100 per month in child support
and she, along with the father of her child, created false
receipts to support the falsely claimed income.[8]

---

[6] AR, 53.

[7] AR, 90.

[8] AR, 90.

Four days before closing, on May 18, 2000, conspirator Judy Gemmill also created and had executed a false gift letter claiming that the purchaser received a gift of $9,000 to assist her in the purchase of this Garland owned home.[9]  On or about May 22, 2000, Garland and Judy Gemmill signed, or caused to be signed, a HUD-1 Settlement Statement for 2042 Wyatt Circle, that failed to disclose that Garland had secretly advanced to the purchaser $10,476.78.1.[10]

As of November 2001, the purchaser was delinquent on her HUD/FHA insured loan.  In September 2002, foreclosure of the HUD/FHA loan was completed[11] and HUD realized a loss of $57,679.81 on the transaction.[12]

In exchange for his guilty plea, Garland agreed to a term of incarceration of eighteen months and to enter into a separate civil settlement "pursuant to which defendant Garland shall make payment of $1,150,000, a part of which payment shall constitute full restitution and a part of which payment shall constitute multiple damages and penalties under the False Claims Act."[13]

---

[9]  *Id.*

[10]  *Id.*

[11]  AR, 103.

[12]  AR, 106.

[13]  AR, 54.

This payment was to be made in acknowledgment that "HUD was a victim of the conspiracy charged in this case, that HUD has indemnified and made whole <u>all other victims in this case</u> and that therefore no restitution order is appropriate."(emphasis added).[14]

In the separate civil Settlement Agreement, Garland agreed to pay $1,150,000 in three scheduled installments.  Payment of this amount was to "resolve any and all disputes, claims and demands, except as expressly excluded herein, that the United States may have against Garland or the Garland companies" arising from alleged fraud in 101 real estate transactions involving the sale of homes built by Garland or the Garland companies.[15]  These 101 real estate transactions were listed in an attachment to the Settlement Agreement and labeled "Attachment A."[16]   The Settlement Agreement further stated that, "Other than such admissions as Garland makes in connection with his entry of a guilty plea pursuant to his plea agreement with the Unites States in the Criminal Action, Garland and the Garland companies deny

---

[14] *Id.*

[15] AR, 109.

[16] *Id.*

the remaining allegations of the United States as set forth herein."[17]

In consideration for Garland's agreement to pay the United States $1.15 million, it released Garland and three of his companies from "all civil monetary liability to the United States for all civil claims . . .or any other cause of action arising from the "covered conduct."[18]

On March 29, 2005, Garland's plea, specifying the facts and charges he pled guilty to, was taken in open court.[19]

### C.  The Debarments

In notices dated April 7, 2006, Garland and his named affiliates,[20] plaintiffs herein, were notified by HUD of their proposed indefinite debarments, based upon his conviction.  Garland and his affiliates responded to the notice, requesting a hearing.

An informal hearing was held on July 20, 2006.  On August 25, 2006, HUD's Debarring Official at the time, Margarita Maisonet, issued her decision debarring plaintiffs for six years. This was a shorter period than the indefinite debarment that HUD

---

[17] *Id.*, at 2-3.

[18] AR, 110-111.

[19] AR, 166-175.

[20] AR, 61.

had originally proposed.  As the basis for her decision, Ms.
Maisonet found as facts, *inter alia,* that:  Garland was a real
estate developer and participant in HUD programs; Garland was
sentenced to eighteen months in prison and three years of
supervised release for the crimes he committed related to his
company's fraudulent participation in FHA single-family home
purchase transactions; Garland paid full restitution of
$1,150,000, which included losses to HUD and False Claims Act
claims against him; and that Garland had not participated in the
FHA program since 2001.[21]

On October 13, 2006, plaintiffs moved for reconsideration of
the length of the debarments.  They based their motion on the
allegation that "the Debarring Official inappropriately, and
based on no evidence, concluded that Respondents engaged in
multiple fraudulent transactions." **[22]**

In her decision dated December 18, 2006, the Debarring
Official denied plaintiffs' motion for reconsideration, stating:

> They premise their argument on the Debarring Official's
> determination, which refers to fraudulent
> "transactions" which Respondents claim improperly goes
> beyond the one transaction for which Respondent Garland
> was convicted.  Although the loss to HUD in the one
> fraudulent transaction to which Respondent Philip
> Garland admitted guilt was $57,000, Respondent Garland

---

[21] AR, 706.

[22] AR, 716.  Plaintiffs did not claim that they were otherwise
improperly debarred.

in a civil settlement agreement agreed to pay
$1,150,000 of reimbursement for losses in HUD's FHA
program and for potential multiple damages and
penalties under the False Claims Act.  He also agreed
to 18 months of incarceration followed by 3 years of
supervised release.  These facts make it clear that a
substantial duration of debarment to protect the
Government is indicated here.

## ARGUMENT

### A.    The "Arbitrary and Capricious" Standard for Administrative Procedures Act Appeals

Plaintiffs contend that HUD's determination to debar them
for six years from participation was "arbitrary, capricious, an
abuse of discretion, and not in accordance with the law, which is
a violation of the Administrative Procedure Act, 5 U.S.C. § 702,
*et seq.*"[23]

"The Court's application of the arbitrary and capricious
standard has been substantively equated with the inquiry whether
there was "substantial evidence" to debar the plaintiff."[24]  The
reviewing court's role is deferential—"[t]he standard is not
whether this Court would have acted differently.  Rather, the
Court must determine whether the decision was rational and based
on the consideration of all relevant factors."[25]

---

[23] Complaint, at ¶ 39.

[24] *Textor v. Cheney*, 757 F. Supp. 51, 56 (D.D.C. 1991).

[25] *Textor* at 56, *quoting Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416 (1971).

The Department contends that its decision was rational and based on a consideration of all relevant factors, as demonstrated below.

### B.  Standard For Summary Judgment

Summary judgment is appropriate when the evidence before the court shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law.[26]

### 1.  There Is No Genuine Issue As To Any Material Fact

Factual disputes that are irrelevant or unnecessary will not be counted in determining a motion for summary judgment; it is only those "facts that might affect the outcome of the suit under the governing law [that] will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  A plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in its complaint, making unsubstantiated assertions or producing only a scintilla of evidence.  *Anderson*, 477 U.S. at 248; *Matsushita Electric Industrial Co., Ltd.*, 475

---

[26] Fed. R. Civ. P. 56(c).

U.S. at 587; *Little v. Liquid Air Corp.* 37 F.3d 1069, 1075 (6th

Cir. 1994).

Moreover, summary judgment is particularly appropriate:

> in cases in which the court is asked to review or
> enforce a decision of a federal administrative
> agency.  The explanation for this lies in the
> relationship between the summary judgment standard
> of *no genuine issue as to any material fact* and
> the nature of judicial review of administrative
> decisions…. [T]he administrative agency is the
> fact finder.  Judicial review has the function of
> determining whether the administrative action is
> consistent with the law—that and no more.

*Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214-215 (5th

Cir. 1996) *quoting* 10A Charles Alan Wright, Arthur R. Miller &

Mary Kay Kane, *Federal Practice and Procedure*: Civil 2d § 2733

(1983)(internal quotations and footnotes omitted; emphasis

added).

This case seeks administrative agency review of a debarment

action that was based upon a criminal conviction in federal

court.  The facts of this case are entirely incorporated in the

documents making up the administrative record.[27]  The

---

[27] Plaintiffs conceded that Garland's criminal conviction is
considered sufficient cause for debarment, and acknowledged that
a debarment respondent <u>normally</u> will not have an additional
opportunity to challenge the facts upon which a proposed
debarment is based if the debarment is based upon a conviction.
*Complaint,* ¶ 7.  (emphasis added).  However, the regulation
plaintiffs paraphrase, 24 C.F.R. § 24.830, actually contains no
qualification:

(a) You as a respondent will not have an additional
(continued...)

administrative record consists primarily of Garland's Indictment, his Guilty Plea Agreement, the notices of proposed debarment, Plaintiffs' appeal of the proposed debarments, briefs submitted by the parties in the debarment proceeding, the Debarring Official's Determination, and the Denial of Motion for Reconsideration.

Plaintiffs have not challenged the authenticity of any of these documents in prior proceedings in this matter and do not appear to do so in their complaint.  Instead, they challenge the Debarring Official's perceived interpretation of the documents memorializing the terms of Garland's conviction.

Significantly, plaintiffs only reference Garland's conviction documents, which are contained in the administrative record, and although they refer to "unsupported factual

---

[27](...continued)
    opportunity to challenge the facts if the debarring
    official determines that—
        (1) Your debarment is based upon a conviction or
    civil judgment;
    * * *

    This provision is the logical result of the Department's
standard of proof in a debarment action, set forth at 24 CFR §
24.850:
    1. In any debarment action, we must establish the cause
       for debarment by a preponderance of the evidence.
    2. If the proposed debarment is based upon a conviction
       or civil judgment, the standard of proof is met.

allegations presented by the government," they offer no citation for those alleged allegations.[28]

Plaintiffs appear to surmise that "unproven allegations" were "proffered" by the "government" because plaintiffs' debarment period is too lengthy -- "[t]he actual facts admitted by Mr. Garland demonstrate that HUD's decision to debar Plaintiffs for a period of six (6) years was excessive and punitive in nature and, thus, arbitrary, capricious, an abuse of discretion, and not in accordance with the law. . . ."[29]  This argument is unmeritorious because it assumes that "unproven allegations" were indeed proffered.

Since plaintiffs cite no document or other piece of evidence outside of the administrative record for their appeal, summary judgment is appropriate.

2. **Defendants Are Entitled To Judgment As A Matter of Law**

The party moving for summary judgment may meet its burden of proof by demonstrating that the record contains insufficient evidence on which to base a verdict for the nonmoving party. The moving party is not required to present any affirmative evidence on its behalf.  *Anderson v. Liberty Lobby, Inc.*, 477

---

[28] Complaint, ¶ 36.

[29] Complaint, ¶ 39.

U.S. at 248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986);
*Appleby v. Harvey*, 517 F. Supp.2d 253 (D.D.C. 2007).

The heart of plaintiffs' case is their contention that
"HUD's use of the civil settlement and payment thereunder against
Plaintiffs as a tacit admission of facts to support a decision to
debar plaintiffs for a period of six (6) years despite the plain
language of the civil settlement agreement that it and any
actions there under were not an admission of liability was
arbitrary, capricious, an abuse of discretion, and not in
accordance with the law . . . ."[30]  Plaintiffs further allege
that HUD relied on "unsupported and unproven allegations"
concerning the extent of the conspiracy in which Garland was
involved.[31]

These statements are demonstrably wrong.  The Debarring
Official's findings and conclusions were fully supported by the
documents that were before her, and most especially by the
documents that were signed by Garland himself.

In making these charges, plaintiffs are presumably referring
to the Debarring Official's finding that Garland "paid full
restitution of $1,150,000, which included losses to HUD and False

---

[30] Complaint, ¶ 38.

[31] *Id.* at ¶ 37.

17

Claims Act claims against him"[32] and her conclusion that he "acknowledges his wrongdoing in this matter and has made restitution of $1,150,000 for HUD losses and multiple False Claims Act claims."[33]  However, these findings and conclusions are nothing more than facts drawn directly from Garland's Guilty Plea Agreement, facts which he can not deny.  Far from being "unsupported" or "unproved," the facts on which the Debarring Official relied were fully admitted by Garland and, indeed, unavoidable.

Specifically, the Debarring Official's findings and conclusions are based on the statements that "the Parties [including Garland] acknowledge that HUD was a victim of the conspiracy charged in this case" and that "restitution in this case shall be paid to HUD under a separate civil settlement, pursuant to which Garland shall make payment of $1,150,000, a part of which payment shall constitute full restitution and a part of which payment shall constitute multiple damages and penalties under the False Claims Act."[34]  Inasmuch as Garland was an integral part of the "conspiracy charged in this case," and inasmuch as Garland agreed that he should pay $1,150,000 as

---

[32] AR, 706.

[33] AR, 707.

[34] AR, 54.

penalties and restitution for the damage caused to HUD by the conspiracy, HUD's reliance on those facts to determine the length of his debarment was perfectly appropriate.

Plaintiffs also assert that HUD should not have considered the damages paid by Garland ($1,150,000) because the Settlement Agreement disclaimed liability for any damages beyond those arising from the Dover transaction ($57,000).[35]  But that disclaimer contains a significant exception.  It excludes "such admissions as Garland makes in connection with his entry of a plea of guilty,"[36] i.e., in the Guilty Plea Agreement.  These admissions included Garland's acknowledgment that there were multiple victims of his conspiracy and that since "HUD ha[d] indemnified and made whole all other victims in this case no restitution order [was] appropriate."[37]  As described above, it is the statements in the Guilty Plea Agreement that form the basis for the Debarring Official's Determination.  Consequently, the Debarring Official was well within her rights to take into consideration the admissions contained in the Guilty Plea Agreement, notwithstanding the limited disclaimer contained in the Settlement Agreement.

---

[35] Complaint, at ¶ 38.

[36] AR, 109-110.

[37] AR, 54.

HUD uses the factors contained in 24 C.F.R. § 24.860 to determine the length of a debarment. Admittedly, debarments should generally not exceed three years.[38] However, a longer debarment can be imposed "if circumstances warrant."[39]

In this case, the Debarring Official took into account those factors contained in 24 C.F.R. § 24.860 which are applicable to this case. For example, she considered the $1,150,000 in actual harm resulting from Garland's criminal conduct, as well as the nature of the crime he committed.[40] In mitigation, she observed that Garland had paid the restitution required by the Settlement Agreement,[41] that his business had been converted to land development with no construction of housing which could qualify for FHA financing,[42] and that Garland had not participated in the FHA program since 2001.[43],[44]

By its own terms, the factors in 24 C.F.R. § 24.860 are not exclusive. "The debarring official may consider other factors if

---

[38] 24 C.F.R. § 24.865(a).

[39] *Id.*

[40] 24 C.F.R. § 24.860(a, f).

[41] 24 C.F.R. § 24.860(g, h).

[42] 24 C.F.R. § 24.860(g).

[43] 24 C.F.R. § 24.860(g).

[44] AR, 706-707.

appropriate in light of the circumstances of a particular case."[45]  Here, the Debarring Official appropriately took into account the nature and extent of Garland's criminal conduct.[46] She found that Garland was sentenced to eighteen months in prison and three years of supervised release for his company's fraudulent participation in FHA single-family home purchase transactions.

Balancing the serious harm to HUD resulting from the conspiracy of which Garland was a principal part with the mitigating factors in the case, the Debarring Official reduced the proposed indefinite debarment to one for a period of six years.  This outcome is based squarely on unchallenged facts and is within the broad discretion given the Debarring Official in the regulations.

In her ruling on Plaintiffs' Motion for Reconsideration, the Debarring Official again focused on the losses suffered by HUD. She noted that Garland found it in his best interest to plead guilty and accept eighteen months in prison followed by three years of supervised release.  She noted that although Garland's plea was to one count, involving one FHA insured transaction from which HUD suffered a loss of $57,000, Garland agreed to pay

---

[45] 24 C.F.R. § 24.860(a).

[46] AR, 706-707.

$1,150,000 to HUD to reimburse it for its losses to its FHA program and for potential multiple damages and penalties under the False Claims Act.  Based on the foregoing, the Debarring Official once again found that "[t]hese facts make it clear that a substantial duration of debarment to protect the Government is indicated here," and properly denied the Plaintiffs' motion.[47]

Caselaw squarely supports this result.  In *Coccia v. Defense Logistics Agency*, 1992 WL 345106 (E.D. Pa. 1992), the plaintiff contended his fifteen year debarment was unlawful, as it constituted punishment.  Coccia was indicted for creating and running a criminal enterprise, "which extracted bribes and pay-offs from cloth suppliers and garment manufacturers in return for Government contracts."[48]  On February 24, 1987, the plaintiff pled guilty to two counts of the Indictment; agreed to cooperate with the Government in its ongoing criminal investigation; and forfeited $331,000 to the Government.  On March 10, 1988, Coccia was sentenced to ten years incarceration, placed on five years probation upon release from confinement, and fined $50,000.[49]

Considering the legality of Coccia's debarment, the Court first stated the standard of review:

---

[47] *Id.*

[48] *Coccia* at *1.

[49] *Id.*

Thus, to find an agency action arbitrary or capricious under § 706(2)(A), a court must first 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' *Shane Meat Co. v. United States Dept. of Defense,* 800 F.2d 334, 336 (3rd Cir.1986) (citations omitted) (emphasis added). Moreover, if agency action 'is based on the relevant factors and establishes a rational connection between the facts found and the decisions made, the court should not set aside the action as arbitrary and capricious.' *Id.* Relevant factors with regard to DLA debarment proceedings include 'the seriousness of the contractor's acts or omissions and any mitigating factors.' *Id.* at 337 (citing 48 C.F.R. § 9.406-1(a) (1984) (emphasis added).[50]

The Court found the agency's decision well-supported by the facts. The Debarring Official's consideration of the nature and extent of Coccia's criminal conduct was appropriate and rational. The nature and extent of the plaintiff's criminal conduct is probative of "the seriousness of the contractor's acts or omissions" and, thus, is a "relevant factor" in determining the length of debarment necessary to protect the Government.[51] Coccia offered mitigating factors, which the Debarring Official considered, but determined were irrelevant to the question of Coccia's present responsibility.[52] The Court found that the Debarring Official correctly focused on the risk to the government presented by Coccia, and denied Coccia's argument that

---

[50] *Coccia* at *3.

[51] *Coccia* at *4.

[52] *Id.*

uniform fairness means uniformity in result, finding that uniform fairness meant uniformity in procedural process.[53]  Coccia's fifteen year debarment was affirmed.[54]

A debarment of more than three years for a criminal conviction is not arbitrary or capricious, or an abuse of discretion, even where the criminal act is negligent, as opposed to plaintiffs' intentional crime.  In *Burke v. EPA*, 127 F.Supp.2d 235 (D.D.C. 2001), the plaintiff, the president and sole shareholder of ACMAR Regional Landfill, Inc., and the majority shareholder of Acmar Landfill, a Partnership, was found guilty of negligently violating the Clean Water Act and subsequently debarred by the EPA for five years.[55]

Burke challenged his period of debarment, claiming: "that the EPA misstated the facts when it claimed that he implemented remedial actions only after the ADEM [Alabama Department of Environmental Management] forced him into compliance. . . "; "that his criminal conviction resulted from a one-day violation, rather than multiple violations extending over several years, as EPA implies. . ."; and, "that the agency failed to consider evidence that he undertook voluntary compliance efforts 'more and

---

[53] *Coccia* at *5.

[54] *Coccia* at *6.

[55] *Burke* at 236-237, 239.

more seriously, and more and more proactively, over time.'"[56]
The Court found Burke's arguments unpersuasive. In dismissing the
case, the Court set forth the following analysis:

> EPA has discretion to impose debarment periods
> consistent with the case circumstances and mitigating
> factors. This court's only responsibility then is to
> ensure that such discretion was exercised non-
> arbitrarily and that EPA's Decision was supported by
> the administrative record. Even if the Decision was
> "of less than ideal clarity," the court must
> nonetheless uphold it "if the agency's path may
> reasonably be discerned." *Bowman Transp., Inc. v.
> Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285,
> 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). This is the case
> here.
>
> EPA provided several valid reasons in support of its
> determination that a five-year, as opposed to three-
> year, debarment was appropriate. The seriousness of
> Burke's criminal conviction, his failure to take
> personal responsibility for his offense, and his direct
> control of and involvement with ACMAR and the Landfill
> each provided an independent basis for EPA's
> conclusion. In addition, EPA adequately demonstrated
> that it considered-though found unpersuasive-Burke's
> arguments concerning his past "misunderstandings" with
> environmental regulators. EPA also properly
> entertained Burke's alternative argument that other EPA
> debarment decisions suggest that a longer debarment
> period is unwarranted. Because there is no clear error
> of judgment or failure to consider relevant factors,
> this court concludes that EPA's imposition of a five-
> year, as opposed to a three-year, debarment was not
> arbitrary and capricious.

As set forth above, even a negligent criminal act may
legally justify the imposition of a debarment for over three

---

[56] *Burke* at 241-242.

years.  Given that plaintiffs' debarments here were based on Philip Garland's conviction for a crime requiring specific intent, Conspiracy to Make False Statements to HUD, in which he admitted to conspiring with others to commit offenses against the United States, including the making, passing, uttering, and publishing of false statements to HUD, knowing the same to be false, for the purpose of obtaining HUD-insured loans,[61] the imposition of a six-year debarment is not arbitrary, capricious, or an abuse of discretion.  As articulated by the Debarring Official, she determined the significance of Garland's crime, and the extent of the losses suffered by HUD, warranted the Plaintiffs' debarment for six years.

---

[12] Indictment, p. 1-7.

## CONCLUSION

Defendants respectfully request that this Court enter an order of Summary Judgment in their favor, finding that HUD's Debarring Official acted within her discretion and based on substantial evidence when she debarred the Plaintiffs for six years.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____/s/_____
MARINA UTGOFF BRASWELL, D.C. BAR #416587
Assistant United States Attorney
U.S. Attorney's Office
555 4th Street, N.W. - Civil Division
Washington, D.C. 20530
(202) 514-7226

Of Counsel:

Stanley E. Field
Office of General Counsel
U.S. Department of Housing
  & Urban Development

27

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHILIP GARLAND, <u>et</u> <u>al</u>.,         )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              ) Civil No. 07-1641 (RWR)
                                        )
U.S. DEPARTMENT OF HOUSING &            )
URBAN DEVELOPMENT, <u>et</u> <u>al</u>.,     )
                                        )
        Defendants.                     )
_____)

<u>ORDER</u>

        Upon consideration of defendants' motion for summary judgment, plaintiff's responding opposition, and the entire record in this case, and it appearing to the Court that the grant of defendant's motion would be just and proper, it is hereby

        ORDERED that defendants' motion for summary judgment is granted; and it is further

        ORDERED that this case is dismissed with prejudice.


_____
                    UNITED STATES DISTRICT JUDGE