UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                         :
PHILIP GARLAND et al.,                   :
                                         :
     Plaintiffs,                         :
                                         :
     v.                                  :     Civil Action No. 07-1641 (RWR)
                                         :
U.S. DEPARTMENT OF HOUSING AND           :
URBAN DEVELOPMENT et al.,                 :
                                         :
     Defendants.                         :
_____

**<u>Unopposed Motion For Leave To File Supplement To Administrative Record</u>**

Plaintiffs' Philip Garland and his affiliated companies, Garland Construction, Inc.

("GCI"), and Wandering Streams, Inc. ("WS") (collectively, "Plaintiffs"), by their undersigned

counsel, hereby moves the Court, for leave to file the transcription of the debarment hearing

attached as Exhibit A as a Supplement to the Administrative Record filed on February 25, 2008,

in support thereof, avers as follows:

        1.     The Administrative Record originally filed on February 25, 2008 was

incomplete.

        2.     The Administrative Record did not contain the "tape recording" of the

debarment hearing referred to in the Debarring Official's Determination.  A.R. at 705.

        3.     Plaintiffs have subsequently received a copy of the "tape recording" from

Defendants and have transcribed the tape.

        4.     A true and correct copy of the transcription is attached as Exhibit A with

pages consecutively numbered 853-880.

5.      Defendants consent to the relief requested herein except that they dispute the use of the word "single" on page 25, line 8 of the transcript and assert that the correct word should be "civil".

WHEREFORE, Plaintiffs respectfully request the Court grant their request for leave to file the transcription of the debarment hearing attached as Exhibit A as a Supplement to the Administrative Record filed on February 25, 2008.

Respectfully submitted,

July 30, 2008                                /s/ Ellen C. Brotman
                                            Ellen C. Brotman
                                            ID # 71775
                                            Montgomery, McCracken,
                                                Walker & Rhoads, LLP
                                            123 South Broad Street
                                            Philadelphia, PA  19109
                                            215-772-1500
                                            Fax No. 215-772-7620
                                            ebrotman@mmwr.com

<u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing Unopposed Motion to File Supplement to

Administrative Record was sent on this date by electronic filing to:

> Marina Utgoff Braswell, Esquire
> U.S. Attorneys Office for the
>   District of Columbia
> 555 Fourth Street, NW
> Room 10-413
> Washington, DC  20530

Respectfully submitted,

July 30, 2008

<u>/s/ Ellen C. Brotman</u>
Ellen C. Brotman
ID # 71775
Montgomery, McCracken,
  Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
215-772-1500
Fax No. 215-772-7620
ebrotman@mmwr.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            :
PHILIP GARLAND et al.,                      :
                                            :
      Plaintiffs,                           :
                                            :
      v.                                    :     Civil Action No. 07-1641 (RWR)
                                            :
U.S. DEPARTMENT OF HOUSING AND              :
URBAN DEVELOPMENT et al.,                   :
                                            :
      Defendants.                           :
_____

ORDER

     AND NOW, this ___ day of _____, 2008, upon consideration of Plaintiffs'

Unopposed Motion for Leave to File Supplement to Administrative Record, it is hereby

ORDERED and DECREED that said motion is GRANTED and Exhibit A to Plaintiffs Motion is

hereby deemed filed as a Supplement to the Administrative Record filed on February 25, 2008.

_____
UNITED STATES DISTRICT JUDGE

**Debarment Hearing in the Matter of Philip Garland,**
**Garland Construction, Inc., and**
**Wondering Streams Inc.**
**Docket Nos. 063355DB, 063356DB, 063357DB**

Mr. Wolf:    This is going to be a hearing in the Matter of Philip Garland which is docket

number 063355DB, Garland Construction, Inc. Docket Number 0633556DB and Wandering

Streams, Inc. <<inaudible>> 063357DB.  And, um, we have discussed the process that will occur

this morning.  I have informed the counsel who are in the room uh, Mr. Field for Government,

Mr. Scheff, for Respondent, about how the process will be conducted today.  And I am Mier

Wolf the Debarring Official's designee.

Um…let me see if there's anything else I have to <<inaudible>> alright so, what we're

going to do is begin with Mr. Field, representing the Government.

Mr. Field:    Thank you your honor.  Let me briefly go over the basis for the first debarment.

uh… Mr. Garland on July 21, 2005 was convicted on Count I of a 59 count indictment.

Mr. Wolf:    Will you speak up a little, Mr. Field I want to make sure that…

Mr. Field:    I'm sorry.  On July 21, 2005 Philip Garland the Respondent was convicted of

Count I of a 59 Count indictment brought against him on the Court's acceptance of his Guilty

Plea Agreement.  Uh, Count I alleged that Mr. Garland was a member of conspiracy to make

false statements to HUD to obtain loans in violation of 18 U.S.C. 371.  The, um, Plea Agreement

incorporated a sentence of 18 months incarceration and uh, he also, Mr. Garland also entered into

a Civil Settlement Agreement made part of his criminal sentence through the Guilty Plea

Agreement in which he agreed to pay the United States $1.15 million to reimburse HUD as well

as pay HUD False Claims, False Claims Act penalties uh – it was—

Mr. Wolf:        Let let…

Mr. Field:        --characterized as total restitution, total restitution to HUD of $1.15 million.

Mr. Wolf:        So is it the Government in the, we had a conference call as you both know about the matter.  There may be, there may have been some, uh what, difference of understanding about what this 1.1 million reimbursement was, but you think this, what does the Government say the reimbursement, was that complete reimbursement, I guess is the question.

Mr. Wolf:        Well what I plan on doing here is just briefly quoting the paragraph four of the agreement.  "The parties agree that this Plea Agreement is made pursuant to Federal Rules of Criminal Procedure 11(c)(1)—"

Mr. Scheff – manner or pursuant, that's paragraph 4 of the Plea Agreement?

Mr. Field:        Paragraph four of the Plea Agreement.

Mr. Wolf:        Yeah, hold on just a second Mr. Field so we can… find our way there.  Alright, then it's the Guilty Plea Agreement, Exhibit A from the Government.

Mr. Field:  Yes.

Mr. Wolf:  Okay.  And we're on page…

Mr. Field:        We're on paragraph four.

Mr. Wolf:        Oh, paragraph four.

Mr. Scheff:        Paragraph four, page 2.  The pages, there are no pages –

Mr. Field:      Page numbers.

Mr. Wolf:       Okay.

Mr. Field:      We're on page, page two of the document and paragraph four. <<inaudible>> "The parties agree this Plea Agreement is made pursuant to Federal Rules of Criminal Procedure 11(c)(1) subsection C and that regardless of any stipulation or finding as to loss the following specific sentences are the joint recommendation for the disposition of this case. A term of imprisonment of 18 months and full restitution to the Department of Housing and Urban Development. The parties agree that restitution in this case shall be paid to HUD under separate civil settlement pursuant to which defendant Garland shall make payment of $1.15 million. Part of which payment shall constitute full restitution and part of which payment shall constitute multiple damages and penalties under the False Claims Act." We're not, I'm not interpreting this in any way and I think the documents speak for itself.

Mr. Wolf:       Okay, well let me….

Mr. Field:      <<in audible>> The entire settlement agreement and um, the uh the order for this, <<inaudible>> as does the entire Settlement agreement as well as the order—

Mr. Wolf:       Right they speak for themselves, but like as I read it, it looks to me like there some understanding as what restitution, full restitution would be and Respondent has paid it.

Mr. Field:      Correct. $1.15 million.

Mr. Wolf:       Alright. Uh huh, go on. – You'll have your chance Mr. Scheff.

Mr. Scheff:     I understand that, okay.

-3-

855

Mr. Field:     Um, in reviewing Mr. Scheff's brief for his client, Mr. Scheff, uh, states that his

client is presently responsible without indicating the basis for that conclusion and then goes on to

discuss mitigating factors. Uh five, <<inaudible>> changed the focus of his business, removing

all his co-defendants from his employ, the narrow scope of Mr. Garland's conviction and, paying

more than full restitution, and no history of prior wrong doing.  Uh, we would ask that the

Debarring Official note that these are all pre-conviction actions, and in most cases after

indictment, except for the history of prior wrongdoing.  Uh, we would ask the Debarring Official

to look closely at the characterization of that mitigating factor of payment of more than full

restitution when the settlement agreement itself says that full restitution is $1.15 million.

Mr. Wolf:     I don't understand that point I guess.

Mr. Field:     Okay, uh.

Mr. Wolf:     I mean I, am I oversimplifying?

Mr. Field:     Mr.–If you, if you review Mr. Scheff's brief he argues that as a factor in

mitigation that Mr. Garland has paid more than full restitution.  We, the Government, will state

that if one reviews the settlement agreement full restitution is $1.15 million.  The uh -

Mr. Wolf:     Okay.

Mr. Field:     The Respondent does not argue that he has paid more than the $1.15 dollars,

which has been represented in the settlement agreement as full restitution.

Mr. Wolf:     But isn't . . . wasn't it a matter, and we are going to turn to you in a second here

Mr. Scheff, ah and I do not want to belabor this, because the restitution, you know, look to me

like full restitution has been paid.  But I think there was some statement that full restitution as well as False Claim Act penalties were paid.

Mr. Field:     I think that the full restitution was defined as including –

Mr. Wolf:      --the false, right--

Mr. Field:     --the false claim act penalties.

Mr. Wolf:      Okay.

Mr. Field:     Full restitution is included as a definition under the Civil Settlement Agreement –

Mr. Wolf:      Alright, well I'm not –

Mr. Field:     --according to what I read I mean I think that what was stated in the settlement agreement.  Uhh, I'll read it again—

Mr. Wolf:      Okay, well can you stop, just a minute Mr. Field.  Hold on just a minute.  Mr. Scheff?

Mr. Scheff:    I lived this, so I can tell you exactly what happened.

Mr. Wolf:  Okay.  But let me tell you, that well do it, tell us, tell us what happened.  Hold on just a minute Mr. Field, I want to hear if from Mr. Scheff, now.  I want to hear. . .

Mr. Scheff:    Thank you.  Um, I think the language that Mr. Field read from paragraph four of the Plea Agreement, comes right out, actually that language does not even appear in the Civil Agreement at all.  The language in the Civil Agreement simply says civil payment.  But, what this language means is this:  there was a dispute as to what the loss was.  The Government took

-5-

the position that the loss, in, in negotiation, the Government took the position that the loss was

$1.15 million.  We did not agree that the loss was $1.15 million.  We negotiated a payment and

the language, is specifically, full restitution and multiple damages and penalties under the False

Claims Act and there is no allocation that has been agreed upon between the Government and

Mr. Garland, or adjudicated by any court, as to what the allocations are in that $1.15 million as to

what portion is restitution, what portion is penalties, what portion is False Claims Act penalties.

And, we were prepared and we have submitted as Exhibits 10 and 11 expert reports we had

retained experts for purposes of trial, we were prepared to put experts on at sentencing, and at the

end of the day, what the, what the Court found for purposes of the criminal case was that the

loss, was um 57,000, you know, and a few hundred dollars above $57,000.  The $1.15 million

was a negotiated settlement.  That's all it was.  There is no admission of liability in the

settlement agreement.  Ahh, all it is a negotiated number and there has been never any

determination as to what portion of that portion of that is restitution.  Hence, our statement that it

is more than full restitution, as our experts have opined what the maximum amount of loss that

Mr. Garland arguably could have been found liable for civilly, not criminally, but civilly.  And

so, that is the basis for our statement that more than full restitution has been paid, simply it was a

negotiated settlement.

Mr. Wolf:        Okay.

Mr. Scheff:      So that's—

Mr. Wolf:        Okay, I understand that.  I, do you view that any differently Mr. Field.  I mean I

don't want to stay on the subject too long because it may be an over simplification, but I do think

that the Government, the Respondent and I understand that restitution was made. Um, but there are different ways of looking at what that figure, includes I guess.

Mr. Field:      Yeah, I think that the Debarring Official will note that there is a significant difference between the $57,000 and some hundreds of dollars, that was adjudged a loss with the one, uh, Count that was pled to for that one home, versus the entire amount that was paid in restitution.

Mr. Wolf:      Right.

Mr. Field:      And that is the significant part of that settlement agreement, in the criminal matter.

Mr. Wolf:      Right,

Mr. Field:      And that's all –

Mr. Wolf:      Okay.

Mr. Field:      --that's all,

Mr. Wolf:      --Okay – no I under—

Mr. Field:      --that's the whole beef.   That's what the Government wants to say on that point.

Mr. Wolf:      Okay.  Thank you.

Mr. Field:      Uh, there are some cases that Mr. Scheff has offered as a basis, for um mitigation. Ted Dalton, first, uh this is a facially a similar case, Dalton falsely represented the income, assets and down payments of HUD FHA purposes however, purchasers, however, there were

-7-

significant differences.  Uh, Mr. Dalton entered a Plea Agreement in November 89, and was

placed on probation.  He did not serve any period of confinement, but was um, out in the

community working during his period of suspension.  He was employed for three years by a

roofing company Rienhardt, prior to the debarment hearing.  He had no ownership interest in this

company.  He offered references at hearing, including president of his employer as a reference

and that person characterized Respondent as responsible and trustworthy employee.  Also,

Dalton also offered an affidavit which expressed remorse to the seriousness of his prior acts of

misconduct.  To the contrary, Mr. Garland still owns all his companies and footnote one shows

that he owns significant, a significant number other than ones mentioned in the caption of the

case.  He is still involved in real estate development.  He still owns houses that he may sell under

lease purchase agreements –

Mr. Wolf:     Do you think that he, ah—

Mr. Field:     -- he still remains

Mr. Wolf:     --excuse me.

Mr. Field:     Sure.

Mr. Wolf:     How can Mr. Garland still be involved in real estate I mean, from isn't he

incarcerated?

Mr. Field:     --Yeah.  Yes sir.

Mr. Wolf:     But he can continue his business from where he is, I mean you said that he's still

involved in the real estate business.  I don't know how that works.

-8-

Mr. Field:      He still owns the real estate company.

Mr. Wolf:       Right.

Mr. Field:      His affidavit states he still will be involved-, still will be managing the company –

Mr. Wolf:       I assumed that he—

Mr. Field:      GCI, after he is released from jail.

Mr. Wolf:       That's what I assumed.  And I also, maybe I, there is more to it than I realized. When you say real estate do you mean building houses and selling houses, because there in the record, the uh what the Respondent is saying, through counsel and through ah declarant, is that they are going to be in land development but not building and selling houses.

Mr. Field:      Uh, I was going to get to that a little bit later—

Mr. Wolf:       Sorry.

Mr. Field:      --but GCI is one of many companies that Mr. Garland has an ownership interest in and there's been no representation made about his activities in any of the other companies he has ownership interest in, one.

Mr. Wolf:       So—

Mr. Field:      Two,

Mr. Wolf:       Correct me if I am wrong, I want to make sure I understand things, so we do not want to go too quickly over things.

Mr. Field:    Ok

Mr. Wolf:    So, is it the Government's point that there are a number of entities involved with

Mr. Garland and the fact that he says that the entities that are involved in the debarment case

would only be used for land development, doesn't mean that the other entities aren't –

Mr. Field:    Correct.

Mr. Wolf:    Uh, building house.

Mr. Field:    He doesn't say that say that.

Mr. Wolf:    Though we don't know.

Mr. Field:    He does not say that either though.  One, he only speaks of Garland Construction,

Incorporated.

Mr. Wolf:    Right.

Mr. Field:    He does not speak of Wandering Streams and Garland Construction, Incorporated

he says is no longer building houses.  However, it is involved in the purchase of real estate, the

subdividing the real estate for, um, residential construction of homes.  His company still owns

homes that were sold under lease purchase agreements that he may sell in the future.  And he

will still be engaged, be able to engage in covered transactions when he is released from prison.

Uh, Dalton also references two cases that I think are quite significant, Dalton was a real

extension of the two, um, cases that it was based upon.  Plunk and Coleman, both referenced in

the uh Dalton case.  Plunk was an attorney and was disbarred at the time he was considered for

-10-

debarment and the judge in that case determined that debarment wasn't necessary because he could no longer function in his profession where he had, um, committed the acts that that were the basis for his debarment. Uh, Coleman was a real estate agent who was suspended and could no longer work in the real estate industry. Mr. Garland has not, uh is not out of that field, he is not debarred in any way. He is not suspended from real estate involvement, he can take any action he wishes to after he is released from prison in the real estate area. He has made a statement that is part of his submission made by Mr. Scheff where he discusses what his involvement is going to be. But I hope the Debarring Official will notice that Mr. Garland is not giving up his interest in Garland Construction Company. He's taking, he makes a representation that he'll take a lesser role in the company, limited to management and financing. But he will maintain overall management control of the company. Mr. Garland has –

Mr. Wolf:      <<laughing>> I'm just <<inaudible>> relax Mr. Scheff—

Mr. Field:      Mr. Garland—

Mr. Wolf:      <<inaudible>>

Mr. Scheff:    I have the benefit of being involved in this case for five years.

Mr. Field:      Correct.

Mr. Wolf:      Okay. Well, but we have the benefit of a fresh pair of eyes, so there is something to be said for everything.

Mr. Scheff:    I agree.

Mr. Wolf:      Go on Mr. Field.

-11-

Mr. Field:      Uh, Mr. Garland is still in prison therefore um, he cannot offer any evidence of

his present responsibility since the conviction.  Uh, we don't have any business references for his

present responsibility since his conviction.  Mr. Garland has not expressed any remorse for his

conduct or acknowledged the seriousness of his conduct.  Uh, ARC Asbestos Removal

Company, Inc. was also referenced by the Respondent for the proposition that removal of

employees who conducted the criminal act be should be evidence in mitigation.   This references

uh, the second factor of mitigation, removal of his co-defendants from his employ.  The

difficulty for the Respondent in using this case is that ARC Asbestos Removal Company, Inc.

was the subject of the debarment, not its principal.  Um and this was found, evidence of the

removal of these employees from positions of responsibility within the company was found in

that case to be mitigation for ARC.  Um, that ARC's president was removed from management

and employment of this company but in this case it is inapposite when we have a Respondent

that's an individual.  Unless, unless, I won't go. uh…

We talked about him making his representation that he will not assume the same

responsibilities he held now at Garland.  Uh…let's see… I'd ask the Debarring Official to review

footnote one of Mr. Scheff's Brief for Mr. Garland, which lists his other companies that appear

to be by their name to be involved in land development.

Perlow, *In re Harold Perlow* is an interesting case.  Contrary to what the Respondents

imply in its brief, it stands for the proposition that, although the Government cannot rely upon

allegations not proven as a collateral basis for pursuing the sanction of debarment, and I'm

quoting here, "nevertheless, evidence of Perlow's abuse of Bay State by the misappropriation of

fees due Bay State is well within the ambit of matters arising from his conviction.  These

ancillary matters can properly be considered in the instant proceeding as reflecting upon his

-12-

present responsibility because they arise from the facts underlying his Guilty Plea", his Guilty

Plea, excuse me.

Mr. Wolf:    What's the name of that case again?

Mr. Field:    That is Perlow, In re Howard, P-E-R-L-O-W.  Um, that's a sort of, I would submit

encompassing the *res gestae* rule of evidence.  It allows the facts and circumstances surrounding

the commission of a crime to admit as evidence in aggravation.

Um, the settlement agreement of course was incorporated, incorporated and referred to

the Guilty Plea Agreement.  I've gone through the paragraph there, we submit that the Settlement

Agreement and the Guilty Plea Agreement should be considered in their entirety by the

Debarring Official in making a decision in this case.  Perlow also discusses restitution as

mitigation.  I quote, "while restitution can be accepted as evidence in mitigation, the

circumstances under which the restitution is made should be scrutinized to ascertain how the act

of restitution was undertaken.  Restitution when facing the possibility of criminal penalties can

be self-serving and is often motivated by fear of even greater financial liability or possible

incarceration." Excuse me, uh, we submit that a parallel can be drawn here with Mr. Garland's

settlement in his case.

Uh, the passage of time since the violation as a mitigating factor was discussed in Perlow

as well as brought up by the Respondent.  There though the judge also mentioned in Perlow the

Carl Seitz case and quoted favorably, "however the passage of time ipso facto, does not establish

present responsibility.  The appropriate test for present responsibility does not focus merely on

the number of years which have passed since Respondent's misconduct occurred, but rather on

current indicia of Respondent's professionalism and business practice which the Government

-13-

must consider." And we submit since the Respondent is still in prison he's not had a chance to

demonstrate his present responsibility or professional or business practice. And any argument

that a respondent's, that a respondent's behavior should -- while he was under indictment should

be considered for the purpose of mitigation, uh I believe is disingenuous. Um, referring to the

judge's logic upon his consideration of the restitution issue of evidence of mitigation I think the

Debarring Official should draw the same conclusion, that the passage of time without further

misconduct while under indictment while facing the possibility of criminal penalties is not

evidence of mitigation but only self interest. Again um, Mr. Garland doesn't express remorse for

his misconduct or acknowledge the serious, seriousness of his misconduct at least in his

statements. He is not offering insight into his motivations. He indicates he intends to remove

himself from the venue in which he committed the crime, that is the sale of houses, uh but

without remorse or frank explanation for his crime. I believe the Debarring Official is left with a

tacit admission that Mr. Garland is not presently responsible. He is the same person he was

when he committed the crime and un-changed. What he offers is not a change in himself but a

change in where he does business. Um...

Mr. Wolf:     That's kind of a leap, to know that anybody's the same after they've been, been
convicted of a crime and then pr... we just don't know, but...

Mr. Field:     No, but, but usually its part of, uh, rehabilitation, that they acknowledge the crime
and –

Mr. Wolf:     Right, but we don't know –

Mr. Field:     --But –

-14-

Mr. Wolf:      And I think—

Mr. Field:      --But Re—

Mr. Wolf:      And I think we <<inaudible this>>

Mr. Field:      --But remorse is one of the issues, one of the relevant factors—

Mr. Wolf:      It is.

Mr. Field:      -- to be considered in, uh, debarment.

Mr. Wolf:      I understand that.

Mr. Field:      --<<inaudible>>

Mr. Wolf:      I understand that, but I don't necessarily take it beyond, to say he is or isn't changed person, I mean.  But remorse is not officially in the document.

Mr. Field:      Thank you.

Mr. Wolf:      Okay.  Should we have Mr. Scheff give his position now?  Are you, are you?

Mr. Field:      Now, or Mr. Scheff if you want a few minutes?

Mr. Scheff:    No, okay.

Mr. Wolf:      Okay, alright, go ahead Mr. Scheff.

Mr. Scheff:    Thank you.  Um, a few things and then I'll get to, a few responses and I'll get to my more formal presentation.  First of all, I think one of the most, or perhaps the most significant

-15-

factor here is the change in Mr. Garland's business, the nature of his business, occurred not when he was under indictment, not after he was convicted, but it occurred in 2001. And since 2001, the nature of Mr. Garland's business has been completely changed. And I will detail the changes. And when Mr. Garland and Mr. Bashore in their declarations talk about Garland Construction, Garland Construction is, is a management company which manages all of the other entities. And so, when the business is described, it is the entire business. It is not just Garland Construction and Wandering Streams. Wandering Streams, by the way does no business, Wandering Streams was a real estate development which has been completely sold for probably 8 years and is... its an entity, but it hasn't conduct business in 6 or 7 years.

Um, the nature of the business change involved, and what Mr. Garland and what Mr. Bashore say in their declarations is, what Mr. Garland used to do, what his business used to be was the buying of land, developing infrastructure, sub-dividing the lots, building the homes, and selling the homes. That was his business, up until 2001, when the business changed. And in that business he had numerous employees, sales people, agents, construction people, um... multiple offices, uh, specifically offices in York, Pennsylvania and Abbotstown, Pennsylvania. His office is in Lancaster, Pennsylvania. Lancaster and York are approximately 35 to 50 miles apart. Abbotstown, is another 10, 12, 15 miles west of York. The offending conduct occurred out of the York and Abbotstown offices by people who in large part operated in an autonomous manner. In 2001, Mr. Garland changed his business. At that point in time, the four co-defendants: Mr. Ballantyne had left in 1996, Mr. Herb had left in 1999, and Ms. Gemmill and Mr. Myford left in 2001.

The business changed as follows: Mr. Garland limited the nature of his business to buying raw land, developing the infrastructure, subdividing it, and selling those lots to builders

-16-

who then build houses and sell those to individuals. As Mr. Bashore says in his Declaration, the

number of employees Mr. Garland now has are three: Mr. Bashore who runs the business on a

day to day basis, who has been running the business on a day to day basis since 2001; a

receptionist; and part time book keeper. And all they do is buy land, develop it, and sell it to

builders. And so, the nature of the conduct for which Mr. Garland entered his Guilty Plea, and

which is charged in the indictment, is not possible under his current structure of business. Which

he says in his Declaration, he is not returning to the old nature of business, and he hasn't

conducted that business since 2001. What the hold over here is this: there was a limited number

of homes, which were referred to in the Declaration, which back in the 90's, 2000, 2001 were not

sold to the person who lived, lived in it, but were rented under a lease-buy provision in this

agreement. And over a course of years, some of those people have executed their buy options

and have bought them. And that's what remains. That is like a, you know, a handful of homes

left out of hundreds of homes Mr. Garland built and sold.

So the nature of the change of business, and the reason why we say to you that there is

present responsibility, is there's been present responsibility since 2001 when the nature of the

business changed and Mr. Bashore took over on a day to day basis the management of the

business and virtually every aspect of it. What Mr. Garland does in the business is he identifies

land to purchase, negotiates the purchase with the, with the seller, and buys the land. Bashore

then takes over and does everything else in terms of getting all the approval, dealing with

engineers, dealing with lawyers, dealing with townships in terms of getting subdivision approval

and infrastructure put in. That's the nature of this business. And so, what occurred in 2000 with

Mr. Garland and the one transaction on which the Guilty Plea was based is not the nature of the

business and hasn't been the nature of the business. That should be for the Debarring Official, in

my opinion, the best evidence of financial responsibility, because the business has been

conducted that way for the last five and a half years and will be conducted that way in the future.

So that's the best evidence of financial responsibility that one can have, a five year track record

of conduct, which does not fall over the line. And so, that's what we have here.

Um, I want to make a couple of other comments and then go through, like I said, my

prepared presentation. We've already dealt with the restitution issue so I'm not going to address

it anymore, unless there's additional questions that you have on it.

Mr. Wolf:      Right, no, thank you.

Mr. Scheff:    Um, with respect to the facts and circumstances for the *res gestae* argument, Mr.

Field made at the end. You know, if the Government is going to take the position that Mr.

Garland was involved in broad ranging conduct, then we have a significant factual dispute.

Cause they're going to have to put on evidence to show that Mr. Garland was involved in those

transactions and that his criminal conduct was more far ranging and broader than what he

admitted to, which was the basis of his Guilty Plea, which is the basis of this debarment. And so,

if they want to prove it, you know, we ought to go before an administrative law judge and we'll

litigate that and the administrative law judge will make appropriate findings, and it'll go before

the Debarring Official, but we're not there. We have…

Mr. Wolf:      Excuse me, in the circumstances where the Respondent did admit to committing a

crime, wasn't, and it was on one house I believe, isn't that where he gave a check to the home

buyer, in ways in which FHA does allow-

Mr. Scheff:    What, what happened was—

-18-

Mr. Wolf:        --or, excuse me –

Mr. Scheff:      I'm sorry.

Mr. Wolf:        --he gave a check to someone else and said make this appear to be a gift from you to the home buyer.

Mr. Scheff:      Well, the precise admission that Mr. Garland made is detailed in our brief –

Mr. Wolf:        Right.

Mr. Scheff:      And was detailed in open court during the plea colloquy, and the essence of what is, is that Ms. Gemmill, who was in the Abbotstown office, came to him and asked him to give her a check so a false gift could be made for an individual, Tracy Townsend, who bought this house.  And that was done.  And that's what Mr. Garland did.

Mr. Wolf:        Right.

Mr. Scheff:      And, and, yes.  That's exactly what he did.  But that's the scope of his criminal conduct.  And there's been no proof or evidence beyond that.  And so if there is to be consideration of transactions beyond what he has admitted to then I suggest that there is a significant factual dispute that needs to be litigated in front of the administrative law judge and we'll see what the facts are.

Mr. Field:       That is, if I could just respond to that issue.

Mr. Wolf:        I think you ask me, if you can respond to that issue.

Mr. Field:       If I could respond to that issue…

-19-

Mr. Wolf:       And I say yes, you can respond to that.

Mr. Field:      Alright, um, no, I was asking for something much, much, smaller than that,

consideration of all the documents and the language of those documents, and a <<inaudible>>

nothing more.  I wasn't trying to bring in any other facts, or any other documents, other than

what I submitted and included in my brief.

Mr. Wolf:       What some of the documents?  So the Government—

Mr. Field:      I'm just saying that's the res – that's part and parcel of the whole settlement in

this matter was the documents he included<<inaudible>>

Mr. Wolf:       Right.

Mr. Field:      Some of these documents <<inaudible>>

Mr. Wolf:       And there's an understanding and that Respondent was convicted for participation

in one transaction.

Mr. Field:      Yes.

Mr. Wolf:       Okay, alright.

Mr. Scheff:     And I'm not sure what that means, but we'll see what, I suppose, the Debarring

Official believes that means but–

Mr. Wolf:       Right.

Mr. Scheff:     --if it believes, if it is, if that is to suggest or if it is open to be found that that

means consideration of transactions beyond what Mr. Garland entered a Guilty Plea for, I would

-20-

suggest that there's no evidence in this record, or frankly any other record, upon which that

finding can be made.  And the indictment in this case—

Mr. Wolf:        But, but one thing, you know, and I don't speak on behalf of the Debarring

Official, but of course there's been a million dollar restitution and your, if, but, seemingly

without an exact determination of loss.  So how, common sense wise, do we say well this was

one transaction and there was, that involved $57,000, but here is a million dollar restitution.

Mr. Scheff:      As a matter of law you have to because paragraph 7 of the Settlement Agreement,

of the Civil Settlement Agreement which is Exhibit Six to our papers, says "other than such

admissions as Garland makes in connection with his entry of plea of guilty pursuant to his Plea

Agreement with the United States in the Criminal Action, Garland and Garland Companies deny

the remaining allegations the United States as set forth herein."  There is no evidence –

Mr. Field:  There is no Admission.

Mr. Scheff:      There is no admission and—

Mr. Wolf:  Right.

Mr. Scheff:      and there's no evidence.

Mr. Field:        No evidence was introduced by the State, by the Federal Government

Mr. Scheff:      No is evidence that was put on by the Government, by the United States

Government, the party to this proceeding, that Mr. Garland was guilty of anything other than

what he admitted to, and so.

-21-

Mr. Wolf:        In that transaction.

Mr. Scheff:      And so, as a matter of law, you, I do not believe the Debarring Official can

consider as, as you said, as a matter of sort of common sense, that they were involved in any

other transaction, because the United States Government signed a Civil Agreement, stating and

agreeing, that there is no admission of liability and the law does not permit there to be an

inference drawn.  And so—

Mr. Field:       I think, I think—

Mr. Scheff:      I, I would appreciate the consideration of letting me complete my presentation.

As a matter of law, I don't think that sort of common sense inference can be drawn.  Um, we…

Mr. Wolf:        Can we stop here for just a minute.  I'm sorry Mr. Scheff.  What were you going

to say Mr. Field?  And Mr. Field, if you have something to say, please ask me.

Mr. Field:       I apologize.

Mr. Wolf:        That's quite alright.

Mr. Field:       Um, what I was going to say is—I – for clarification purposes this proposed

debarment is based on the conviction and the surrounding documents to that conviction.  We are

only offering the documents concerned with that conviction.  The department could propose

debarment based on any the other factual bases it wishes to <<inaudible>> at any time, but yes

we are limited, we have proposed based on this conviction and we are offering documents only

from this conviction.

-22-

Mr. Wolf:      So, in doing that, and um, why has the Government sought an indefinite

debarment, instead of a three or a five year, or even a seven year debarment, if its based on a

conviction of, in one transaction?

Mr. Field:      Mr. Scheff, in representing his client, wants the benefit of his Guilty Plea

Agreement but not um, the downside of it, as it were.  Ah, as a topic, as we discussed in Dalton,

for example, there we had two transactions, same type of activity, Mr. Dalton was put on

probation, he was not given any jail time, he stayed in the community.  The Court in this case,

and the parties in their Plea Agreement, determined that eighteen month incarceration was due

and a $1.15 million in restitution was due.  The terms of the Settlement Agreement are

significant.  Uh, and although they involve a conviction on one count, the Settlement Agreement

is a document and is the basis for that eventual conviction, it has to be considered by the

Debarring Official.

Mr. Scheff:      I would simply say it is not the basis for the Plea Agreement at all.  The basis for

the Plea Agreement, as is clearly stated during the plea colloquy, which goes on for sixty pages

is the single transaction and that's it.  And $1.15 million, again, is not restitution.  It is restitution,

it is a combination of things which has not been allocated by any court of law or any adjudication

what so ever.  And I'll just go back to that language which says "shall make payment of $1.15

million in part of which payment, shall constitute full restitution, and in part of which payment,

shall constitute multiple damages and penalties under the False Claims Act."  It's not allocated,

and so therefore, its not restitution.  And it is not the basis of the Plea Agreement.  Um. . .

Mr. Wolf:      Okay, I understand the positions, let's put it that way.  So why don't you go on

Mr. Scheff.

-23-

Mr. Scheff:    Um, and its interesting the question that you ask Mr. Field, is the very question I

asked myself. Um, we've conceded that debarment's appropriate in this case. We've conceded

that in our papers. We conceded that when we requested a hearing, it seems to me. But the facts

that he's admitted to, the facts which form the basis for this debarment, as well as the

combination of mitigating factors, which I will go through, do not justify an indefinite debarment

by any means but a much shorter debarment and we suggested the appropriate length. And he's

been convicted of a single transaction, which occurred in 2000. The indictment is not evidence.

The Settlement Agreement is not an admission as a matter of law. The loss was adjudicated by

Judge Gardner at some $57,000 and change. Mr. Garland has no other criminal record. He has a

reputation in his business community for honesty and I would refer the Debarring Official to our

Exhibit 12, submitted with our papers, which were our Sentencing Memo in the criminal matter,

which contain numerous letters from business affiliates, business, people who do business with

him and attest to his honesty in the business community and to his reputation.

The entire nature of the business has changed since the offending conduct in 2000, as I

described. The people involved in the criminal conduct as alleged by the indictment have been

gone for a long time: one for ten years, one for seven years, the other two for five-and-a-half

years. The company is run by an individual who has no criminal record, a former United States

Marine, has extensive experience in the real estate business, has been with Mr. Garland since

mid-2000. We talked about who the other employees are.

He has fully complied with the financial terms of the Civil Agreement. This is not a case

for indefinite debarment. If you look at the factors to be considered by the debarment official,

Debarring Official in 24.860 and you go down those. I would suggest that far more of them

weigh in favor of a much, much lesser debarment under the circumstances than indefinite. The

harm, the loss is $57,000. The scope of the conduct was narrow, a single transaction. There is

no, pattern of wrongdoing. And if there is going to be an allegation of that then we will be in

front of an administrative law judge. There is no other disqualification or debarment of Mr.

Garland for any similar conduct. Um, the extent of this conduct shows that the motivation for

the criminal conduct came from another person, that is Judy Gemmill, who was also indicted

with him. And the statement in Mr. Field' brief, that Mr. Garland devised this crime and

scheme, has no support in any record, let alone this record. He has paid the civil amount. His

admission in Federal Court to criminal responsibility for the single transaction shows his

acceptance of responsibility, as does the payment of the civil payment. He has not cooperated

with the Government, and, indeed, no cooperation has been sought. The positions of the people

who were alleged to have been his co-conspirators, were sales people. The corrective action was

taken, he's gotten out of that business and did it in 2001. He's changed the entire nature of his

business. He did participate himself as the principal in the company in the single transaction,

that's a factor to be considered, and that is one to be considered against him. We have made the

results of our investigation of this matter available to the Government. The Government's not

interested. He did not have standards of control in place at the time. Now they are there, they've

been in there since 2001. Mr. Bashore is the one that manages that. The people have been

removed from the organization and the entire business has changed. And so, I would suggest to

you that if you consider the factors in Part 24.860, far more of them counsel in favor of a short

debarment as opposed to an indefinite debarment. Thank you for <<inaudible>>.

Mr. Wolf:       Okay, thank you. Would you like to say anything else Mr. Field?

Mr. Field:    Um, very briefly, uh, as far as what facts the Debarring Official can, uh, review, those facts include not only the facts that led up to Mr. Garland's conviction, but the documents surrounding that conviction.  It's been offered both by the Respondent and by the Government. And we ask that the Debarring Official read all the documents.  Uh, Mr. Garland is still in real estate.  He has not left the real estate field, he's still in real estate development, uh single family residential, uh, subdivisions.  He's not removed himself from the arena where he could affect HUD.

Mr. Wolf:    Well is that right, just for –

Mr. Field:    Argument.

Mr. Wolf:    --information sake, maybe it's for, maybe for argument sake.  Um, it sounds to me like he's involved more in land transactions than home building.  So does the Government say that in a land transaction you would have involvement with, it wouldn't be with FHA, it might be with interstate land sales?

Mr. Field:    We're not going to make any representation like that, we're, we, we asked the Debarring Official to look at the representations made by the Respondent in Respondent's brief—

Mr. Wolf:    Right.

Mr. Field:    --to look at the documents in the uh, in the parties' briefs, in the Government's brief and to–

Mr. Wolf:    Okay.

-26-

Mr. Field:      -- and we believe under the circumstances of this case that an indefinite

debarment given that Mr. Garland is still in prison.  An indefinite debarment, not never, never, a

lifetime debarment but an indefinite debarment is warranted until Mr. Garland demonstrates

present professional responsibility and conduct.  Not a lifetime debarment, an indefinite

debarment.  And uh, and we would state that that would be the fairest for the Government and

for Mr. Garland.

Mr. Wolf:      And is that the Government's position in other criminal matters that you're aware

of that there are indefinite debarments proposed versus 3 or 5 year debarments depending upon

the seriousness of the crime involved?  I just am not sure about the an… if you aren't sure then

don't, don't answer.

Mr. Field:      I… I don't want to make a representation, that's not part of my brief.  I'm here for

argument.

Mr. Wolf:      Right.

Mr. Field:      I'm not trying to offer any additional documents or case law than I included in my

brief.  So I'd rather not broach that issue.

Mr. Wolf:      Okay.  Um, alright, is there anything else that you'd like to say Mr. Scheff?

Mr. Scheff:      Um, I think that just on a one very, very narrow response.  Um, and that is the, the

present financial responsibility of Mr. Garland is shown since 2001 when he changed his

business.  He doesn't deal with HUD.  He doesn't deal with FHA anymore.  He does private land

transactions and he buys from people who own farms.  Um, that's what he does, he doesn't build

homes.  He hasn't built a home since 2001.  Um, it's a complete change.

-27-

Mr. Wolf:       Okay. Alright. Well, I thank you both and I'll do what I'm supposed to do and this is to review what I've heard at the hearing, go back through the documents, I've been through them, and make a recommendation to the Debarring Official. And you should hear from her within 45 days.

<<Unidentifiable>>:   Thank you very much. Thank you.

Mr. Wolf:       Thank you both, very much. Thank you.

-28-

880