UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                          :

PHILIP GARLAND et al.,            :
                                          :

     Plaintiffs,           :
                                          :

     v.                   :     Civil Action No. 07-1641 (RWR)
                                          :

U.S. DEPARTMENT OF HOUSING AND  :
URBAN DEVELOPMENT et al.,      :
                                          :

     Defendants.         :
—————————————————————

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Philip Garland and his affiliated companies, Garland Construction, Inc. ("GCI"), and Wandering Streams, Inc. ("WS") (collectively, "Plaintiffs"), by their undersigned counsel, hereby moves the Court, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, to enter summary judgment in favor of the Plaintiffs and against Defendants U.S. Department of Housing and Urban Development ("HUD"), Alphonso Jackson, Secretary of HUD, and Margarita Maisonet, Debarring Official for HUD (collectively "Defendants") on Counts I and II of Plaintiffs' Complaint as no genuine issue of material fact exists and Plaintiffs are entitled to judgment as a matter of law. The grounds for Plaintiffs' Motion are fully set forth in the accompanying Statement of Material Facts as To Which There Is No Genuine Issue and

Memorandum in Opposition to the Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment.

Respectfully submitted,

July 30, 2008

/s/ Ellen C. Brotman
Ellen C. Brotman
ID # 71775
Montgomery, McCracken,
    Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
215-772-1500
Fax No. 215-772-7620
ebrotman@mmwr.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        :
PHILIP GARLAND et al.,                  :
                                        :
        Plaintiffs,                     :
                                        :
        v.                              :        Civil Action No. 07-1641 (RWR)
                                        :
U.S. DEPARTMENT OF HOUSING AND          :
URBAN DEVELOPMENT et al.,               :
                                        :
        Defendants.                     :
_____

Pursuant to Local Rule 7(h), Plaintiffs Philip Garland and his affiliated companies,

Garland Construction, Inc. ("GCI"), and Wandering Streams, Inc. ("WS") (collectively,

"Plaintiffs") hereby submit their statement of material facts as to which there is no genuine issue:

1.      In March 2005, Mr. Garland entered into a plea agreement whereby Mr. Garland

pled guilty to a *single count*, involving a conspiracy to submit false statements to United States

Department of Housing and Urban Development ("HUD") in connection with a *single loan*

*transaction*.  A.R. 53-58 (Guilty Plea); 189-190 (Guilty Plea Colloquy).

2.      The Government claimed that HUD incurred approximately $57,000 in loss

purportedly caused by the eventual foreclosure of this *single loan* subject to the plea.  A.R. 363,

366 (Sentencing Hearing).

3.      The United States District Court for the Eastern District of Pennsylvania (the

"Pennsylvania Court"), likewise, found that Mr. Garland's criminal conduct caused

approximately $57,000 loss.  A.R. 51 (Judgment), 363, 371 (Sentencing Hearing).

4.      The plea agreement stemmed from a March 2004 indictment of Mr. Garland on twenty-seven (27) counts of making false statements to HUD in violation of 18 U.S.C. § 1010, five (5) counts of mail fraud in violation of 18 U.S.C. § 1341, and one (1) count of conspiracy to make false statements to HUD to obtain loans and commit mail fraud in violation of 18 U.S.C. § 371.  A.R. 61-99.

5.      The Government dismissed the remaining 32 counts of the Indictment.  A.R. 394.

6.      As a result of his guilty plea, Mr. Garland was sentenced to eighteen (18) months imprisonment, three (3) years of supervised release and 80 hours of community service. A.R. 382-383 (Sentencing Hearing).

7.      The remaining charges were dismissed at the time of sentencing.  A.R. 394.

8.      At the same time, Mr. Garland entered into a civil settlement agreement ("Settlement Agreement") in which he agreed to pay $1.15 million in restitution, multiple damages, and civil penalties.  A.R. 108-120.

9.      The Settlement Agreement was contingent upon the Pennsylvania Court's acceptance of Mr. Garland's criminal plea.  A.R. 113

10.      Mr. Garland's criminal plea referenced the Settlement Agreement and recommended that no restitution order or criminal fine was necessary.  A.R. 54, 140-141.

11.      Mr. Garland did not admit to any civil liability or any of the Government's allegations, beyond the admission underlying his guilty plea.  A.R. 108-120.

12.     Mr. Garland did not admit that the settlement amount accurately reflected the damages suffered by HUD as a result of the conduct alleged.  To the contrary, Mr. Garland *expressly denied* all allegations other than the admissions underlying the plea agreement.  A.R. 109-110 at ¶ 7.

13.     The Government never introduced evidence in support of its allegations that Mr. Garland engaged in multiple fraudulent transactions.  To this day, these allegations are unproven and have been abandoned by the Government.

14.     On April 10, 2006, Mr. Garland, GCI, WS, and Mr. Garland's former affiliate, Garland Excavating, Inc.,[1] received notice of their proposed debarment and continued suspension (which initially began on October 27, 2004) from participation in procurement and nonprocurement transactions with HUD, for an indefinite period of time.  A.R. 1-8.

15.     The notices stated that the proposed debarment was based on Mr. Garland's conviction, described above.  A.R. 1-8.

16.     The notices did not state a collateral basis for debarment.  *Id*.

17.     The notices also stated that if the Debarring Official determined "that a genuine dispute over material facts exists, [she would] refer this matter to a Hearing Officer, who is an administrative judge, for a formal hearing to make findings of fact pursuant to 24 CFS Section 24.845."  A.R. 2, 4, 7.

---

[1] Garland Excavating, Inc. ("GEI") is no longer in business.

18.     In the Government's Pre-Hearing Brief in Support of An Indefinite Debarment, the Government proffered Mr. Garland's settlement with the Government as a collateral basis for his debarment:

> Respondent's commission of this offense, as well as his payment of $1.15 million to settle another 100 potential cases of False Claims Act violations, indicates a lack of business integrity or business honesty that seriously and directly affects his present responsibility, and is *another cause* for his debarment.

A.R. 35 (emphasis added).

19.     The Government further claimed that Mr. Garland acknowledged that the loss to the Government "was substantial, resulting in Mr. Garland agreeing to Pay HUD a total restitution and penalty amount of $1.15 million."  A.R. 36.

20.     The Government further alleged that "although the plea agreement was as to one count, it is clear that Respondent Garland agreed that the harm to the Department far exceeded the loss on the one loan."  A.R. 37-38; *see also* Sup. A.R. 859.

21.     Plaintiffs vigorously contested these allegations.  A.R. 109-110 at ¶ 7, 203-205, 207-210, 446-520; Sup. A.R. 870-77.

22.     Prior to the debarment hearing, Plaintiffs' counsel had expressed a concern to the Government's counsel and HUD, through Defendant Maisonet's Designee, that it appeared that HUD intended to rely on "facts" that were beyond the factual record and had not been proven by the Government in any forum to support its proposed indefinite debarment.  Plaintiffs contended that, if the Government wanted to rely on these alleged "facts," it would need to present witnesses and other evidence during a fact-finding proceeding to prove those facts before they

could be used as a basis for determining how long Plaintiffs should be debarred. Compl. at ¶¶ 21-22, Answer at ¶¶ 21-22; *cf.* Sup. A.R. 853-859, 870-77.

23.    Defendant Maisonet's Designee stated that he would need to determine whether there were any factual disputes and if so, he could recommend that an evidentiary hearing be held to resolve those factual disputes. No evidentiary hearing was recommended or held. Compl. at ¶ 23, Answer at ¶ 23.

24.    As it turned out, the Government's arguments at the debarment hearing mirrored those in its Brief. The Debarring Official adopted the Government's collateral allegations as fact without affording Plaintiffs an evidentiary hearing. *Compare* Sup. A.R. 859 (Government attorney arguing: "Yeah, I think that the Debarring Official will note that there is a significant difference between the $57,000 and some hundreds of dollars, that was adjudged a loss with the one, uh, Count that was pled to for that one home, versus the entire amount that was paid in restitution."); *with* 873 (Debarring Official's designee stating that "I don't speak on behalf of the Debarring Official, but of course there's been a million dollar restitution and your, if, but seemingly without an exact determination of loss. So how, common sense wise, do we say well this was one transaction and there was, that involved $57,000, but here is a million dollar restitution"); *see also* Supp. A.R. 856-858 (Government attorney arguing that "full restitution" was the entire amount of the civil settlement, including, false claim act penalties), 865 (Government attorney arguing the civil settlement should be considered as "evidence in aggravation" under the "*res gestae* rule of evidence"), 874-75 (Government attorney arguing that "although they involve a conviction on one count, the Settlement Agreement is a document and is the basis for that eventual conviction. . . ."); A.R. 705-706, 849.

7

25.    Plaintiffs renewed their request for an evidentiary hearing if the Government was going to assert that Mr. Garland was involved in improper conduct beyond the single transaction underlying his conviction or that his conduct caused a loss in excess of the approximately $57,000 that was determined in the criminal action.  Sup. A.R. 870-77.

26.    No evidentiary hearing was held.  Compl. at ¶ 23; Answer at ¶ 23.

27.    Plaintiffs offered evidence of the following mitigating factors:

(a)    Mr. Garland changed the scope, nature, and staffing at GCI, specifically those employees involved in the criminal transaction no longer work for GCI and management has been delegated to an employee of unquestionable character.  A.R. 200-202, 433 at ¶ 5, 436-437 at ¶¶ 1-7, 9-11; Sup. A.R. 867-870, 876-877, 879.

(b)    Mr. Garland pled guilty to *one* crime based on *one* discrete transaction that occurred over six years before the debarment hearing, has not had any other misconduct, and has taken steps to prevent similar conduct from occurring.  *See supra*, mitigating factor (a) and A.R. 206, 211, 254;  Sup. A.R. 867-873, 876-77.

(c)    Mr. Garland paid HUD more than full restitution.  A.R. 207-210, 442-444, 446-468, 470-478, 481-520; Sup. A.R. 857-858, 876-877.

(d)    Over 100 letters written on behalf of Mr. Garland demonstrate that he is a man of integrity and honesty notwithstanding this one aberrational incident.  A.R. 211, 540-701; Sup A.R. 876.

28.    On August 25, 2006, after receiving written briefs from Plaintiffs and the Government and holding a hearing in this matter, the Debarring Official entered a determination

that held Plaintiffs were debarred from future participation in Federal procurement and non-procurement transactions for a period of six-years or until December 24, 2010.  A.R. 705-706.

29.     On September 11, 2006, the Debarring Official entered an order clarifying the previous debarment order and stating that the proper end date of the debarment is February 24, 2011.  A.R. 709.

30.     The Debarring Official did not consider all the mitigating factors presented by Plaintiffs or explain why the mitigating factors presented were not relevant.  A.R. 705-706.

31.     The Debarring Official based her decision on her determinations that Mr. Garland engaged in *multiple* transactions, committed *multiple* crimes and caused $1.15 million in "actual harm[.]."  A.R. 705-706, 849-850, Mem. in Support of Defs.' Mot. for Sum. J. ("Defs'. Mem.") at p. 20; Defs.' Statement of Material Facts as to Which There Is No Genuine Issue ("Defs.' Statement of Facts") at ¶¶ 23 and 25.  These allegations have not been admitted and have never been proven in court or evidentiary hearing.  A.R. 109-110 at ¶ 7 (Settlement Agreement); A.R. 51 (Judgment), 53-58 (Guilty Plea), 177-178, 189-190 (Guilty Plea Colloquy), 371 (Sentencing Hearing); Sup. A.R. 870-77.

32.     To the contrary, Plaintiffs vigorously contested these allegations.  A.R. 109-110 at ¶ 7, 177-78, 203-205, 207-210, 446-520; Sup. A.R. 870-77.

33.     The Debarring Official also determined that Mr. Garland plead guilty to *multiple* transactions.  *Compare* A.R. 706, *with* A.R. 53-58 (Guilty Plea), 177-78, 189-190 (Guilty Plea Colloquy).

9

34.     Specifically, the HUD Debarring Official made the following "Findings of Fact"

and expressly considered these facts in determining the length of the Plaintiffs' debarment:

- "Though Respondent Philip Garland pled guilty to *fewer transactions*, prosecutors alleged that Respondent Philip Garland was involved in 101 fraudulent transactions." A.R. 706 (emphasis added).

- "Respondent Philip Garland was sentenced to 18 months in prison and 3 years of supervised release for the *crimes* he committed related to his company's fraudulent participation in FHA single-family home purchase *transactions*. The court ruled that Respondent Philip Garland knew that false information was being provided in FHA loan *transactions* including information on *purchasers*' income and the source of their down *payments*." A.R. 706 (emphasis added); *see also* Defs.' Statement of Facts at ¶23.

- The Debarring Official found "$1,150,000 *in actual harm* resulting from Garland's criminal conduct" and considered this in her determination. Defs.' Mem. at p. 20 (emphasis added); AR 849.

*See also* A.R. 705.

35.     There is no evidentiary support for the above findings and they are not based on

Mr. Garland's conviction. A.R. 51 (Judgment), 53-58 (Guilty Plea), 177-78, 189-190 (Guilty

Plea Colloquy), 371 (Sentencing Hearing). Rather, they are based on the Government's

argument. A.R. 35-38; Sup. A.R. 856-859 (Government attorney arguing "Yeah, I think that the

Debarring Official will note that there is a significant difference between the $57,000 and some

hundreds of dollars, that was adjudged a loss with the one, uh, Count that was pled to for that one

home, versus the entire amount that was paid in restitution."), 865 (Government attorney arguing

that the civil settlement should be considered as "evidence in aggravation" under the "*res gestae*

rule of evidence"), 871-73, 874-75 (Government attorney arguing that the Settlement Agreement

was "the basis for that eventual conviction").

36.     Mr. Garland's payment of $1.15 million in a civil settlement to which he

expressly denied liability, aside from the one transaction to which he pled guilty, does not

establish that this is the amount of "actual harm resulting from Garland's criminal conduct" as alleged by the Defendants,[2] or that Mr. Garland was involved in multiple transactions. A.R. 109-110 at ¶ 7; Defs.' Mem. at p. 20-22; Defs.' Statement of Facts at ¶23; Sup. A.R. 857-858; 870-77.

37.    To the contrary, the guilty plea and the findings in the Pennsylvania Court established that Mr. Garland engaged in a single transaction that caused approximately $57,000 in harm. A.R. 51 (Judgment), 371 (Sentencing Hearing).

38.    Plaintiffs' Motion for Reconsideration was denied. AR 849-850.

Respectfully submitted,

July 30, 2008

/s/ Ellen C. Brotman
Ellen C. Brotman
ID # 71775
Montgomery, McCracken,
    Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA 19109
215-772-1500
Fax No. 215-772-7620
ebrotman@mmwr.com

---

[2] "Defendants" refer collectively to HUD, Alphonso Jackson, Secretary of HUD, and Margarita Maisonet, Debarring Official for HUD.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                                  :
PHILIP GARLAND et al.,                            :
                                                  :
          Plaintiffs,                             :
                                                  :
          v.                                      :        Civil Action No. 07-1641 (RWR)
                                                  :
U.S. DEPARTMENT OF HOUSING AND                    :
URBAN DEVELOPMENT et al.,                         :
                                                  :
          Defendants.                             :
—————————————————————

**PLAINTIFFS' CONCISE RESPONSE TO DEFENDANTS' STATEMENT OF
MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Local Rule 7(h), Plaintiffs Philip Garland and his affiliated companies,

Garland Construction, Inc. ("GCI"), and Wandering Streams, Inc. ("WS") (collectively,

"Plaintiffs") hereby submit their concise response to Defendants'[3] statement of material facts as

to which there is no genuine issue.[4]

    1.       Defendants' statement at Paragraph 1 is undisputed.

    2.       Defendants' statement at Paragraph 2 is undisputed.

    3.       Defendants' statement at Paragraph 3 is undisputed.

    4.       Defendants' statement at Paragraph 4 is undisputed.

---

[3] "Defendants" refer collectively to HUD, Alphonso Jackson, Secretary of HUD, and Margarita Maisonet, Debarring Official for HUD.

[4] While Local Rule 7(h) contemplates a "concise statement of genuine issues setting forth all material facts as to which it is contended there exits a genuine issue necessary to be litigated," Plaintiffs do not contest that the issues in this case can be properly decided on summary judgment. Local Rule 7(h). Nonetheless, to avoid admission of facts mischaracterized by Defendants, Plaintiffs submits a concise response to Defendants' statement of material facts as to which there is no genuine issue.

5.      Defendants' statement at Paragraph 5 is undisputed.

6.      Defendants' statement at Paragraph 6 is undisputed.

7.      Defendants' statement at Paragraph 7 is undisputed.

8.      Defendants' statement at Paragraph 8 is undisputed.

9.      Defendants' statement at Paragraph 9 is undisputed.

10.     Defendants' incorrectly state the advance as $10,476.78.  The advance was $10,326.78.  A.R. 90.  The remainder of Defendants' statement is undisputed.

11.     Defendants' statement that HUD realized a loss of $57,679.81 is disputed.  The Government claimed, and the District Court of the Eastern District of Pennsylvania found that HUD suffered a loss of $57,624.  A.R. 51 (Judgment), 363, 371 (Sentencing Hearing).  The remaining statement at Paragraph 11 is undisputed.

12.     Defendants' characterization of the guilty plea is disputed.  The plea agreement speaks for itself.  In connection with the guilty plea, Mr. Garland and the Government jointly recommended a term of incarceration of eighteen months.  The plea agreement also states that restitution would be paid through the civil settlement entered into by Mr. Garland and the Government and that no further "restitution order is appropriate.  The parties further recommend[ed] that in light of [Mr. Garland's] payment of penalties under the False Claims Act, no criminal fine be imposed."  A.R. 54.

13.     Defendants' characterization of the guilty plea is disputed.  The plea agreement speaks for itself.  The plea agreement states:  "The parties acknowledge that HUD was a victim

2

of the conspiracy charged in this case, that HUD has indemnified and made whole all other victims in this case and that therefore no restitution order is appropriate." A.R. 54. The plea agreement does not state that payment under the Settlement Agreement was to be made in acknowledgement of the forgoing statement.

14.    Defendants' statement at Paragraph 14 is undisputed.

15.    Defendants' statement at Paragraph 15 is undisputed.

16.    Defendants' statement at Paragraph 16 is undisputed.

17.    Defendants' statement at Paragraph 17 is undisputed.

18.    Defendants' statement at Paragraph 18 is undisputed.

19.    Defendants' statement at Paragraph 19 is undisputed.

20.    Defendants' statement at Paragraph 20 is undisputed.

21.    Defendants' statement at Paragraph 21 is undisputed.

22.    Defendants' statement at Paragraph 22 is undisputed.

23.    Defendants' statement at Paragraph 23 is undisputed.

24.    Defendants' statement at Paragraph 24 is undisputed.

25.    Defendants' statement at Paragraph 25 is undisputed.


Respectfully submitted,


July 30, 2008                              /s/ Ellen C. Brotman
                                          Ellen C. Brotman
                                          ID # 71775
                                          Montgomery, McCracken,
                                             Walker & Rhoads, LLP
                                          123 South Broad Street
                                          Philadelphia, PA  19109
                                          215-772-1500
                                          Fax No. 215-772-7620
                                          ebrotman@mmwr.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————
                                        :
PHILIP GARLAND et al.,                  :
                                        :
        Plaintiffs,                     :
                                        :
        v.                              :      Civil Action No. 07-1641 (RWR)
                                        :
U.S. DEPARTMENT OF HOUSING AND          :
URBAN DEVELOPMENT et al.,               :
                                        :
        Defendants.                     :
—————————————————————

### MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiffs Philip Garland and his affiliated companies, Garland Construction, Inc. ("GCI"), and Wandering Streams, Inc. ("WS") (collectively, "Plaintiffs") submit this Memorandum in Opposition to the Defendants'[5] Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1.

## I.      INTRODUCTION

The debarments at issue stem from a March 2005 plea agreement whereby Mr. Garland pled guilty to a *single count*, involving a conspiracy to submit false statements to the United States Department of Urban Development ("HUD") in connection with a *single loan* transaction. The Government alleged, and the United States District Court for the Eastern District of Pennsylvania ("the Pennsylvania Court") determined, that Mr. Garland's conduct resulted in

_____
[5] "Defendants" refer collectively to HUD, Alphonso Jackson, Secretary of HUD, and Margarita Maisonet, Debarring Official for HUD.

approximately $57,000 in loss caused by the eventual foreclosure of this *single loan* subject to the plea.  Nonetheless, Defendants admit that the Debarring official based her decision to debar the Plaintiff for six years on the Government's claims that Mr. Garland engaged in *multiple* fraudulent transactions and caused "actual harm" of approximately $1.15 million.  Plaintiffs were improperly denied an evidentiary hearing to contest the Government's unsupported claims that were not established by Mr. Garland's conviction and a six-year debarment is not warranted on the facts of this case.

## II.    SUMMARY OF ARGUMENT

Plaintiffs admit that Mr. Garland's conviction is a cause for debarment.  However, the six-year debarment ordered by the Debarring Official is arbitrary, capricious, and an abuse of discretion because:   it is based on unsubstantiated factual findings beyond the facts encompassed by Mr. Garland's criminal conviction; Plaintiffs were denied an evidentiary hearing and an opportunity to dispute those factual findings; and the length of the debarment is excessive and improperly punitive.  Finally, Defendants' failure to comply with HUD's regulations and failure to provide Plaintiffs an evidentiary hearing on facts not established by Mr. Garland's criminal conviction was a violation of their due process rights.

Defendants admit that the Debarring official based her decision on the Government's claims that Mr. Garland engaged in *multiple* fraudulent transactions and caused "actual harm" of approximately $1.15 million.  A.R. 705-706, 849-850, Mem. in Support of Defs.' Mot. for Sum. J. ("Defs'. Mem.") at p. 20; Defs.' Statement of Material Facts as to Which There Is No Genuine Issue ("Defs.' Statement of Facts") at ¶¶ 23, 25.  These "facts" were not established at Mr. Garland's plea hearing and Plaintiffs were denied an evidentiary hearing on these allegations. A.R. 51 (Judgment), 53-58 (Guilty Plea); A.R. 109-110 at ¶ 7 (Settlement Agreement); 117-78,

189-90 (Guilty Plea Colloquy); 363, 366, 371 (Sentencing Hearing); Compl. at ¶¶ 21-23, Answer

at ¶¶ 21-2; Sup. A.R. 870-874, 876-77.  Moreover, the debarring official ignored mitigating

factors raised by the Plaintiffs and ordered a lengthy debarment beyond that normally awarded in

such circumstances.  *See, e.g.*, *Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924

at *16-17 (D.D.C. July 16, 2007) (holding that because the debarring official "did not in any way

explain his decision to impose debarment rather than a lesser sanction, given the strength of the

mitigating factors, the Court cannot conclude that that decision was rational or that [the

debarring official] satisfied the procedures. . . ." at issue); *In re Charles Kirkland*, HUDBCA No.

5285-D57, 1991 HUD BCA LEXIS 3 (Jan. 14, 1991) (collecting cases) (noting that "the

Government has generally proposed three-year debarments for violations involving fraud and

misrepresentation.").  As a result, the length of the debarment is arbitrary, excessive and

improperly punitive.

    Additionally, HUD's failure to comply with its own regulations and failure to provide

Plaintiffs' an evidentiary hearing on facts not established by Mr. Garland's criminal conviction

violated Plaintiffs' due process rights.  *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148,

1153 (9th Cir 1998); *accord Eugene Burger Mgmt. Corp. v. United States Dept. of Housing and

Urban Dev.*, No. 01-1701, 2002 U.S. Dist. LEXIS 8442 at *4 (D.D.C. May 9, 2002).  HUD's

regulations require it to give respondents notice and an evidentiary hearing where disputed issues

of material fact exist.  24 C.F.R. § 24.830(b); 24 C.F.R. § 24.805(b); *In re Edward Louis

Charles*, HUDBCA No. 79-378-D29, 1980 HUD BCA LEXIS 22 at *2-6, 8 (May 8, 1980)

(evidentiary hearing held where respondent's guilty plea and conviction was sufficient cause for

debarment but the Government sought to have other facts in the indictment considered).  In this

case, Plaintiffs' Notice of Debarment listed Mr. Garland's conviction as the only basis of

3

debarment and Defendants denied Plaintiffs an evidentiary hearing to challenge the

Government's collateral allegations that exceeded the facts determined by Mr. Garland's

conviction.  A.R. 1-8 (emphasis added); Compl. at ¶¶ 21-23, Answer at ¶¶ 21-23; Sup. A.R. 870-

77.

Finally, to the extent the HUD regulations do not require such a hearing, due process

requires an evidentiary hearing to determine genuinely disputed issues of material fact before a

final determination concerning the length of debarment can be entered.  *See Cosmic v. Marshall*,

No. 80-3321, slip. op. (D.N.J., March 2, 1981) (quoted in *Titan Construction Co., Inc. v.

Weinberger*, No. 85-5533, 1986 U.S. Dist. LEXIS 29232 at *21-22 (D.N.J. Feb. 14, 1986);

*Gonzalez v. Freeman*, 334 F.2d 570, 576, 579 (D.C. Cir. 1964); *cf. Mathews v. Eldridge*, 424

U.S. 319, 335 (1976).

## III.    BRIEF STATEMENT OF FACTS

### The Conviction

In March 2005, Mr. Garland entered into a plea agreement whereby Mr. Garland pled

guilty to a *single count*, involving a conspiracy to submit false statements to HUD in connection

with a *single loan transaction*.  A.R. 53-58 (Guilty Plea); 189-190 (Guilty Plea Colloquy).  The

Government claimed that HUD incurred approximately $57,000 in loss purportedly caused by

the eventual foreclosure of this *single loan* subject to the plea.  A.R. 363, 366 (Sentencing

Hearing).  The United States District Court for the Eastern District of Pennsylvania ("the

Pennsylvania Court"), also, found that Mr. Garland's criminal conduct caused approximately

$57,000.  A.R. 51 (Judgment), 371 (Sentencing Hearing).

The plea agreement stemmed from a March 2004 indictment of Mr. Garland on twenty-

seven (27) counts of making false statements to HUD in violation of 18 U.S.C. § 1010, five (5)

4

counts of mail fraud in violation of 18 U.S.C. § 1341, and one (1) count of conspiracy to make

false statements to HUD to obtain loans and commit mail fraud in violation of 18 U.S.C. § 371.

A.R. 61-99.  The Government dismissed the remaining 32 counts of the Indictment.  A.R. 394.

As a result of his guilty plea, Mr. Garland was sentenced to eighteen (18) months

imprisonment, three (3) years of supervised release and 80 hours of community service.  A.R.

382-383 (Sentencing Hearing).  The remaining charges were dismissed at the time of sentencing.

A.R. 394.  At the same time, Mr. Garland entered into a civil settlement agreement ("Settlement

Agreement") in which he agreed to pay $1.15 million in restitution, multiple damages, and civil

penalties.  A.R. 108-120.   The Settlement Agreement was contingent upon the Court's

acceptance of Mr. Garland's criminal plea.  A.R. 113.  Mr. Garland's criminal plea referenced

the Settlement Agreement and recommended that no further restitution order or criminal fine was

necessary.  A.R. 54, 140-141.  Mr. Garland did not admit to any civil liability or any of the

Government's allegations in connection with the Settlement Agreement, beyond the admission

underlying his guilty plea.  A.R. 108-120.  Mr. Garland also did not admit that the settlement

amount accurately reflected the damages suffered by HUD as a result of the conduct alleged.  To

the contrary, Mr. Garland *expressly denied* all allegations other than the admissions underlying

the plea agreement.  A.R. 109-110 at ¶ 7.

The Government never introduced evidence in support of its allegations that Mr. Garland

engaged in multiple fraudulent transactions.  To this day, these allegations are unproven and

have been abandoned by the Government.

5

### The Debarment

On April 10, 2006, Mr. Garland, GCI, WS, and Mr. Garland's former affiliate, Garland

Excavating, Inc.,[6] received notice of their proposed debarment and continued suspension (which

initially began on October 27, 2004) from participation in procurement and nonprocurement

transactions with HUD, for an indefinite period of time.  A.R. 1-8.  The notices stated that the

proposed debarment was based on Mr. Garland's conviction, described above.  A.R. 1-8.  The

notices did not state a collateral basis for debarment.  *Id.*  The notices also stated that if the

Debarring Official determined "that a genuine dispute over material facts exists, [she would]

refer this matter to a Hearing Officer, who is an administrative judge, for a formal hearing to

make findings of fact pursuant to 24 CFS Section 24.845."  A.R. 2, 4, 7.

In the Government's Pre-Hearing Brief in Support of An Indefinite Debarment, the

Government improperly proffered Mr. Garland's settlement with the Government as a collateral

basis for his debarment:

> Respondent's commission of this offense, as well as his payment of $1.15
> million to settle another 100 potential cases of False Claims Act violations,
> indicates a lack of business integrity or business honesty that seriously and
> directly affects his present responsibility, and is *another cause* for his debarment.

A.R. 35 (emphasis added).  The Government further claimed that Mr. Garland acknowledged

that the loss to the Government "was substantial, resulting in Mr. Garland agreeing to Pay HUD

a total restitution and penalty amount of $1.15 million."  A.R. 36.  The Government also alleged,

without support, that "although the plea agreement was as to one count, it is clear that

Respondent Garland agreed that the harm to the Department far exceeded the loss on the one

---

[6] Garland Excavating, Inc. ("GEI") is no longer in business.

loan." A.R. 37-38. Plaintiffs vigorously contested these allegations. A.R. 109-110 at ¶ 7, 203-205, 207-210, 446-520; Sup. A.R. 870-77.

Prior to the debarment hearing, Plaintiffs' counsel had expressed a concern to the Government's counsel and HUD, through Defendant Maisonet's Designee, that it appeared that HUD intended to rely on "facts" that were beyond the factual record and had not been proven by the Government in any forum to support its proposed indefinite debarment. Plaintiffs contended that, if the Government wanted to rely on these alleged "facts," it would need to present witnesses and other evidence during a fact-finding proceeding to prove those facts before they could be used as a basis for determining how long Plaintiffs should be debarred. Compl. at ¶¶ 21-22, Answer at ¶¶ 21-22; *cf.* Sup. A.R. 853-859, 870-77. Defendant Maisonet's Designee Stated that he would need to determine whether there were any factual disputes and if so, he could recommend that an evidentiary hearing be held to resolve those factual disputes. No evidentiary hearing was recommended or held. Compl. at ¶ 23, Answer at ¶ 23.

As it turned out, the Government's arguments at the debarment hearing mirrored those in its Brief and the Debarring Official erroneously adopted the unsupported allegations as fact without affording Plaintiffs the evidentiary hearing to which they were entitled. *Compare* Sup. A.R. 859 (Government attorney arguing: "Yeah, I think that the Debarring Official will note that there is a significant difference between the $57,000 and some hundreds of dollars, that was adjudged a loss with the one, uh, Count that was pled to for that one home, versus the entire amount that was paid in restitution."); *with* 873 (Debarring Official's designee stating that "I don't speak on behalf of the Debarring Official, but of course there's been a million dollar restitution and your, if, but seemingly without an exact determination of loss. So how, common sense wise, do we say well this was one transaction and there was, that involved $57,000, but

7

here is a million dollar restitution"); *see also* Supp. A.R. 856-858 (Government attorney arguing that "full restitution" was the entire amount of the civil settlement, including, false claim act penalties), 865 (Government attorney arguing the civil settlement should be considered as "evidence in aggravation" under the "*res gestae* rule of evidence"), 874-75 (Government attorney arguing that "although they involve a conviction on one count, the Settlement Agreement is a document and is the basis for that eventual conviction. . . ."); A.R. 705-706, 849. Plaintiffs renewed their request for an evidentiary hearing if the Government was going to assert that Mr. Garland was involved in improper conduct beyond the single transaction underlying his guilty plea or that his conduct cause a loss in excess of the approximately $57,000 that was determined in the criminal action.  Sup. A.R. 870-77.  No evidentiary hearing was held.  *See* Compl. at ¶ 23; Answer at ¶ 23.

Plaintiffs presented evidence of the following mitigating factors:

(1)  Mr. Garland changed the scope, nature, and staffing at GCI, specifically those employees involved in the criminal transaction no longer work for GCI and management has been delegated to an employee of unquestionable character.  A.R. 200-202, 433 at ¶ 5, 436-437 at ¶¶ 1-7, 9-11; Sup. A.R. 867-870, 876-77, 879.

(2)  Mr. Garland pled guilty to *one* crime based on *one* discrete transaction that occurred over six years before the debarment hearing, has not had any other misconduct, and has taken steps to prevent similar conduct from occurring.  *See supra*, mitigating factor 1 and A.R. 206, 211, 254; Sup. A.R. 867-873, 876-77.

(3)  Mr. Garland paid HUD more than full restitution.  A.R. 207-210, 442-444, 446-468, 470-478, 481-520; Sup. A.R. 857-58, 876-77.

(5)  Over 100 letters written on behalf of Mr. Garland's demonstrate that he is a man of integrity and honesty notwithstanding this one aberrational incident.  A.R. 211, 540-701; Sup. A.R. 876.

On August 25, 2006, after receiving written briefs from Plaintiffs and the Government and holding a hearing in this matter, the Debarring Official entered a determination that held Plaintiffs were debarred from future participation in Federal procurement and non-procurement transactions for a period of six-years or until December 24, 2010.  A.R. 705-706.  On September 11, 2006, the Debarring Official entered an order clarifying the previous debarment order and stating that the proper end date of the debarment is February 24, 2011.  A.R. 709.  The Debarring Official did not consider all the mitigating factors presented by Plaintiffs or explain why the mitigating factors presented were not relevant.  A.R. 705-706.

To the contrary, the Debarring Official based her decision on the unsupported allegations that Mr. Garland pled guilty to *multiple* transactions, committed *multiple* crimes and caused $1.15 million in "actual harm"; allegations that have never have been proven and which Plaintiffs vigorously contested.  A.R. 705-706, 849-850, Defs.' Mem. at p. 20; Defs.'  Statement of Facts at ¶¶ 23, 25; A.R. 109-110 at ¶ 7, A.R. 177-78, 203-205, 207-210, 446-520; Sup. A.R. 870-77; *see also* A.R. 51 (Judgment), 371 (Sentencing Hearing).  The Debarring Official also inaccurately determined that Mr. Garland plead guilty to *multiple* transactions.  *Compare* A.R. 53-58 (Guilty Plea); 177-178, 189-190 (Guilty Plea Colloquy), *with* A.R. 706 (Debarment Official's Determination).

Specifically, the HUD Debarring Official made the following "Findings of Fact" based on unsupported allegations, and expressly considered these facts in determining the length of the Plaintiffs' debarment:

- "Though Respondent Philip Garland pled guilty to *fewer transactions*, prosecutors alleged that Respondent Philip Garland was involved in 101 fraudulent transactions." A.R. 706 (emphasis added).

- "Respondent Philip Garland was sentenced to 18 months in prison and 3 years of supervised release for the *crimes* he committed related to his company's fraudulent participation in FHA single-family home purchase *transactions*. The court ruled that Respondent Philip Garland knew that false information was being provided in FHA loan *transactions* including information on *purchasers*' income and the source of their down *payments*." A.R. 706 (emphasis added); *see also* Defs.' Statement of Facts at ¶23.

- The Debarring Official found "$1,150,000 *in actual harm* resulting from Garland's criminal conduct" and considered this in her determination. Defs.' Mem. at p. 20 (emphasis added); AR 849.

*See also* A.R. 705. There is no evidentiary support for the above findings and they are not based on Mr. Garland's conviction. A.R. 51 (Judgment), 53-58 (Guilty Plea), 177-78, 189-190 (Hearing, 371 (Sentencing Hearing). Rather, they are based on the Government's unsupported argument. A.R. 35-38; *compare* Sup. A.R. 859 (Government attorney arguing: "Yeah, I think that the Debarring Official will note that there is a significant difference between the $57,000 and some hundreds of dollars, that was adjudged a loss with the one, uh, Count that was pled to for that one home, versus the entire amount that was paid in restitution."); *with* 873 (Debarring Official's designee stating that "I don't speak on behalf of the Debarring Official, but of course there's been a million dollar restitution and your, if, but seemingly without an exact determination of loss. So how, common sense wise, do we say well this was one transaction and there was, that involved $57,000, but here is a million dollar restitution"); *see also* Supp. A.R. 856-858, 865, 874-75.

Mr. Garland's payment of $1.15 million in a civil settlement to which he expressly denied liability, aside from the one transaction to which he pled guilty, does not establish that this is the amount of "actual harm resulting from Garland's criminal conduct" as alleged by the Defendants, or that Mr. Garland was involved in multiple transactions. Defs.' Mem. at p. 20-22;

Defs.' Statement of Facts at ¶23. To the contrary, the guilty plea and the findings of the

Pennsylvania Court established that Mr. Garland engaged in a single transaction that caused

approximately $57,000 in harm. A.R. 51 (Judgment), 53-58 (Guilty Plea), 189-190 (Guilty Plea

Colloquy); 363, 366, 371 (Sentencing Hearing). Plaintiffs' Motion for Reconsideration was

denied. AR 849-850.

## IV.     Argument

This Court may review HUD's decision to debar Plaintiffs under the Administrative

Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (1988). The APA provides that a reviewing court

shall "hold unlawful and set aside agency action … found to be … arbitrary, capricious, and

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiffs

agree that the issues in this case may be resolved by summary judgment as the material facts at

issue are uncontested. The standard for summary judgment is well established:

> Summary judgment will be granted when the pleadings, depositions, answers to
> interrogatories and admissions on file, together with any affidavits or declarations,
> show that there is no genuine issue as to any material fact and that the moving
> party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is
> "material" if it might affect the outcome of the action under the governing law.

*Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924 at *9 (D.D.C. July 16, 2007).

Plaintiffs admit that Mr. Garland's conviction is a cause for debarment. However, in this

case, the administrative record shows that the debarring official improperly based its

determination on unsubstantiated factual findings beyond the facts underlying Mr. Garland's

criminal hearing, denied Plaintiffs a hearing on these unsubstantial facts, failed to properly

consider the relevant mitigating factors raised by Plaintiffs, and arbitrarily imposed an

excessively lengthy debarment that is improperly punitive. Additionally, Defendants' failure to

comply with HUD's regulations and failure to provide Plaintiffs' an evidentiary hearing on facts

not established by Mr. Garland's criminal conviction was a violation of the Plaintiffs' due

process rights.

> **A.**    **The Debarment Official's Determination Was Arbitrary, Capricious, And An Abuse Of Discretion Because The Debarment Official Denied Plaintiffs The Right To An Evidentiary Hearing And Based Its Findings On Unsupported Allegations In Ordering A Six Year Debarment, And A Six Year Debarment Is Excessive And Punitive**

The APA provides that a reviewing court shall "hold unlawful and set aside agency

action … found to be … arbitrary, capricious, and abuse of discretion, or otherwise not in

accordance with law."  5 U.S.C. § 706(2)(A).

> When the arbitrary and capricious standard is performing that function of assuring factual support, there is no *substantive* difference between what it requires and what would be required by the substantial evidence test, since it is impossible to conceive of a "nonarbitrary" factual judgment supported only by evidence that is not substantial in the APA sense. . . .

*Caiola v. Carroll*, 851 F.2d 395, 398 (D.C. Cir. 1988) (quoting *Assoc. of Data Processing Serv.*

*Orgs., Inc. v. Board of Governors of the Fed. Reserve Sys.*, 745 F.2d 677, 683-84 (D.C. Cir.

1984)).  The District of Columbia Circuit Court has noted that

> [i]n applying the substantial evidence test, [the Court is] obliged to search the entire record, or those parts to which the parties refer us, to determine whether on the basis of all the testimony and exhibits before the agency it could fairly and reasonably find the facts as it did. [The Court] must decide whether there is competent evidence, when viewed in light of contrary evidence that may also appear, which supports the findings upon which the agency has predicated its conclusions.

*Braniff Airways, Inc. v. Civil Aeronautics Board*, 379 F.2d 453, 462-63 (D.C. Cir. 1967)

(internal citation omitted).  Moreover, the Court can not ignore a "fundamental

contradiction between [the agency's] assertion of fact and what the evidence clearly

reveals."  *Id*. at 463.  "Unless there is substantial evidence to support an agency's

findings, a decision must be rejected as irrational." *Silverman v. United States Dept. of Defense*, 817 F. Supp. 846, 848 (S.D. Cal. 1993).[7]

The reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971), *overruled, in part, on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (U.S. 1977). Moreover, "[w]here an agency fails to articulate a rational connection between the facts found and the choice made, the Court may not supply a reasoned basis for the agency's action that the agency itself has not given." *Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924 at *11 (D.D.C. July 16, 2007) (internal quotation and citation omitted) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Defense Council*, 462 U.S. 87, 88 (1983) and *Dithiocarbamate Task Force v. E.P.A.*, 98 F.3d 1394, 1401 (D.C. Cir. 1996)). Finally, "a court may consider only the rationale an agency gives for its actions at the time they occur and not 'post hoc rationalizations by … government agency counsel.'" *Canales*, 2007 U.S. Dist. LEXIS 50924 at *11 (quoting *Ace Motor Freight, Inc. v. I.C.C.*, 557 F.2d 859, 864 (D.C. Cir. 1977)).

The Debarring Official in this case improperly based her determination on unsupported allegations that were not established by Mr. Garland's conviction and to which there were genuine disputes of material fact; denied Mr. Garland an evidentiary hearing to contest these allegations; did not adequately give weight to the mitigating factors raised by Plaintiffs; and, as a result, ordered an excessive length of debarment that

---

[7] Moreover, where the "agency's own factfinding methodology [is] inadequate [de novo factfinding by the District Court] [is] fully authorized by the APA." *NOW v. Social Security Admin. Of the Dept. of Health and Human Servs.*, 736 F.2d 727, 741 (D.C. Cir. 1984).

is not rationally connected to the facts of this case.  The determination should be rejected

as arbitrary, capricious, and an abuse of discretion.

> 1.    **The Debarment Official Denied Plaintiffs The Right To An Evidentiary Hearing And Based Findings On Unsupported Collateral Allegations**

While, a respondent will not normally have an additional opportunity to challenge the

facts upon which a proposed debarment is based if the debarment is based solely upon a

conviction, 24 C.F.R. § 24.830,[8] such debarments must be limited to the facts on which the

conviction is based as a matter of law.  *In re Howard L. Perlow*, HUDBCA No. 92-7131-D5,

1992 HUD BCA LEXIS 17 at * 18 (Dec. 3, 1992); *cf. Canales v. Paulson*, No. 06-1330, 2007

U.S. Dist. LEXIS 50924 at *20-23 (D.D.C. July 16, 2007) (finding "no 'rational connection'

between the facts of [the] case and the decision to debar [plaintiff]" where the Debarring Notice

was facially inaccurate and did not properly refer to the crime the plaintiff was actually

convicted of and noting that the debarring official "appears to have based his decision to debar

[the plaintiff] on a conviction that never occurred").

The debarment decision may not rely on unproven allegations not established by the

conviction as a collateral basis for debarment, without notice of the reliance on unproven

allegations, and an evidentiary hearing on disputed issues of material fact raised by such

allegations.  *Cf. Canales*, 2007 U.S. Dist. LEXIS 50924 at *20-23 (noting that Debarring Notice

must accurately describe the basis for the debarment action); *In re Howard L. Perlow*, 1992

HUD BCA LEXIS 17 at *18 (noting that, as a matter of law, "in the absence of other bases for

---

[8] The relevant regulations have recently been moved to 2 C.F.R. 180, *et. seq*. and 2 C.F.R. 2424, *et. seq*.  However, this determination is controlled by the regulations in effect at the time Petitioner's debarment was imposed and, therefore, this brief refers to the regulations in effect at that time.  *See In re Charles Kirkland*, HUDBCA No. 90-5285-D57, 1991 HUD BCA LEXIS 3, at *5-6, (Jan. 14, 1991).

the proposed debarment, only the facts relevant to [the] guilty plea can be considered. . . ”  and

debarment may not be based on “allegations not proven as a collateral basis for pursuing this

sanction.”); *In re Edward Louis Charles*, HUDBCA No. 79-378-D29, 1980 HUD BCA LEXIS

22 at *2-6, 8 (May 8, 1980) (evidentiary hearing held where respondent’s guilty plea and

conviction was sufficient cause for debarment but the Government sought to have other facts in

the indictment considered); 24 C.F.R. § 24.805 (stating the notice required), § 24.830(b) (stating

the circumstances under which the respondent is entitled to an evidentiary hearing), § 24.840

(stating how fact-finding is conducted).  Similarly, the Debarment Decision may not rely on

unproven allegations in determining the length of the debarment.  *Cf. id.*

The Government must bear the burden of proving any collateral basis for debarment not

established in the underlying criminal hearing by preponderance of the evidence.  *Cf.  In re

Howard L. Perlow*, 1992 HUD BCA LEXIS 17 at * 18; *In re Ted Dalton*, HUDBCA No. 90-

5246-D23, 1991 HUD BCA LEXIS 1 at *1-2, *8-9, *14-15 (finding that the Government failed

to prove that the respondent was violating his suspension as an aggravating factor where

debarment was based on respondent’s conviction); *In re Edward Louis Charles*, 1980 HUD BCA

LEXIS 22 at *2-6, 8 (evidentiary hearing held where the Government sought to establish

additional misconduct beyond that on which a conviction was based); 24 C.F.R. § 24.850 (noting

that where the debarment is not based upon a conviction or civil judgment the cause for

debarment must be based by a preponderance of the evidence); § 24.855 (noting that the

Government has “the burden to prove that a cause for debarment exists”).

The Debarment Notices sent to Plaintiffs are consistent with this logical interpretation of

the regulations.  Although the Debarment Notices stated Mr. Garland’s conviction as the sole

basis for debarment, each Notice stated that “[i]f I [Margarita Maisonet, the Debarment Official]

determine that a genuine dispute over material facts exists, I *will* refer this matter to a Hearing

Officer, who is an administrative judge, for a formal hearing to making findings of fact pursuant

to 24 CFR Section 24.845."  A.R. 2, 4, 7 (emphasis added).

In *In re Edward Louis Charles*, the appellant was indicted for making false statements to

both the Veterans Administration and HUD in violation of 18 U.S.C. § 2(b), 1001 and 1010

(1970), but only pled guilty to three counts of the indictment which charged him with making

false statements to the Veterans administration.  1980 HUD BCA LEXIS 22 at *2-3.  The Court

noted that "[t]he crime for which Charles was convicted i[s] the strongest evidence of a lack of

integrity, *i.e.*, a lack of 'responsibility' on his part" and "an independent ground for debarment

under 25 C.F.R. 24.6(a)(1)."  *Id.* at *8.  Nonetheless, the Government also sought to introduce

evidence concerning appellant's submission of false information to HUD.  *Id.* at *3-4.

The HUD Board of Contract Appeals ("BCA") noted that a hearing based on a conviction

is normally "limited to written su[b]missions" but that appellant was granted a full hearing

because the appellant's "conviction was based on transactions with the Veterans Administration

and … his conduct and transactions with [HUD] did not result in a criminal conviction."  *Id.* at

*2-3.  The Government presented evidence "that appellant had submitted false information to

HUD concerning" applications for FHA mortgage insurance.  *Id.* at *3-4.  Both sides presented

live testimony that was subject to cross-examination.  *Id.* at *4-*6.  The BCA determined the

appellant had "engaged in a course of conduct over an extended period of time that violated a

criminal statute and demonstrated a willful and criminal disregard for the public interest and

[HUD's] laws and regulations" and that two years was an appropriate period of debarment.  *Id.* at

*8-10.

In this case, the Debarment Notices sent to Plaintiffs stated Mr. Garland's conviction as the *only* basis for debarment of Plaintiffs.  A.R. 1-8.  Mr. Garland's conviction was for a single transaction that the Pennsylvania Court determined caused approximately $57,000 in harm.  AR 53-58 (Plea Agreement), 42, 51 (Judgment), 189-190 (Guilty Plea Colloquy), 371 (Sentencing Hearing).  Nonetheless, in the Government's Pre-Hearing Brief in Support of an Indefinite Debarment, the Government improperly proffered Mr. Garland's settlement with the Government as a collateral basis for his debarment:

> Respondent's … payment of $1.15 million to settle another 100 potential cases of False Claims Act violations, indicates a lack of business integrity or business honesty that seriously and directly affects his present responsibility, and is *another cause* for his debarment.

A.R. 35 (emphasis added).  The Government further alleged, without support, that "although the plea agreement was as to one count, it is clear that Respondent Garland agreed that the harm to the Department far exceeded the loss on the one loan."  A.R. 37-38.

 The fact the Settlement Agreement existed was not in dispute.  However, contrary to the Defendants' arguments, the settlement did not establish as a matter of law that Mr. Garland was involved in more than the one transaction to which he pled guilty, that the Settlement Agreement reflected the "actual harm" HUD sustained from that single transaction, or even that the Settlement Agreement reflected the "actual harm" HUD sustained from all the conduct alleged. *Compare* Defs.' Mem. at p. 20 (emphasis added) (admitting that the Debarring Official considered the $1.15 settlement the "actual harm resulting from Garland's criminal conduct"); Defs.' Statement of Facts at ¶¶ 23, 25; A.R. 706, 849; *with* A.R. 42, 51 (Judgment); 177-178 (Guilty Plea Colloquy); 363, 366, 371 (Sentencing Hearing).  These material facts were expressly disputed by the Plaintiffs.  A.R. 177-78 (Guilty Plea Colloquy); 203-205, 207-210, 446-520; Sup. A.R. 857-58, 870-874, 875-77.

17

Mr. Garland did not admit to any liability beyond the *single transaction* to which he pled guilty nor did the Government establish any additional liability.  A.R. 109-110 at ¶ 7 (Settlement Agreement); Sup. A.R. 873-874.  To the contrary, Mr. Garland *expressly denied* all allegations other than the admissions made in connection with the plea agreement.  A.R. 109-110 at ¶ 7; Sup. A.R. 873-874.  The Pennsylvania Court found that Mr. Garland's conduct caused approximately $57,000 in harm.  A.R. 42, 51 (Judgment); 371 (Sentencing Hearing).

Moreover, *neither party* to the Settlement Agreement asserted that the amount of the settlement reflected the "actual harm" HUD sustained for the alleged conduct.  Defs.' Mem. at p. 20.  To the contrary, both parties acknowledged that the settlement included multiple damages and penalties under the False Claims Act.  A.R. 54, 137, 140-141.  In any event, it is well established that "settlement dollars are not synonymous with damages but merely a contractual estimate of the settling tortfeasor's liability; they include not only damages but also the value of avoiding the risk and expense of trial."[9] *Neil v. Kavena*, 859 P.2d 203, 206 (Ariz. Ct. App. 1993) (discussing the principal in the context of set-off for non-settling tortfeasors); *accord D'Angelo v. Fitzmaurice, 863 So. 2d 311*, 318 (Fla. 2003) (citation omitted) (same); *Nelson v. Johnson*, 599 N.W.2d 246, 251 (N.D. 1999) (citation omitted) (same); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 431 (Tex. 1984) (same); *Torres v. Xomox Corp.*, 56 Cal. Rptr. 2d 455, 479 (Cal. App. Ct. 1996) (citation omitted) (same).  The Debarment Official's consideration of the amount of settlement as the "actual harm resulting from Garland's criminal conduct" was clearly in error.  Defs.' Mem. at p. 20 (emphasis added).

---

[9] Moreover, while debarring officials are "not required to follow formal rules of evidence", it should be noted that it is well established under the Federal Rules of Evidence that "evidence of a settlement is not admissible 'to prove liability for, invalidity of, or amount of a claim that was disputed as to validity . . . .'" *C & E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 318-319 (D.D.C. 2008) (footnote omitted) (quoting Fed. R. Evid. 408).

The Plaintiffs vigorously contested the Government's unsupported claims which were not established by Mr. Garland's conviction and requested an evidentiary hearing. A.R. 203-205, 207-210, 446-520; *see also* A.R. 51 (Judgment), 371 (Sentencing Hearing); Compl. at ¶ 23, Answer at ¶ 23; Sup. A.R. 870-874, 875-77. Nonetheless, the Debarring Official relied on the Government's unsupported factual allegations that Mr. Garland engaged in *multiple* fraudulent transactions and caused "$1,150,000 *in actual harm*," in making her determination. Defs.' Mem. at p. 20 (emphasis added); Defs.' Statement of Facts at ¶¶ 23, 25; AR 706, 849; Sup. A.R. 856-859, 865, 871-73, 874-75. The Debarment Official's findings exceeded the facts on which Garland's guilty plea was based and improperly based the debarment, in part, on unsupported allegations as a collateral basis for the debarment. Defs.' Mem. at p. 20; Defs.' Statement of Facts at ¶¶ 23, 25; AR 35, 706, 849. Plaintiffs' requests for an evidentiary hearing concerning the Government's collateral allegations were denied. Compl. at ¶ 23, Answer at ¶ 23; Sup. A.R. 870-77. The denial of an evidentiary hearing on the Government's unsupported allegations and the determination based on these unsupported allegations were arbitrary, capricious, and an abuse of discretion.

For the forgoing reasons, the six-year debarment ordered by the Debarring Official is arbitrary, capricious, and an abuse of discretion in that it is based on unsubstantiated factual findings beyond the facts underlying Mr. Garland's criminal hearing for which Plaintiffs were denied an evidentiary hearing and Plaintiffs are entitled to summary judgment on Count I.

## 2.    A Six Year Debarment Is Excessive And Improperly Punitive

Mr. Garland's conviction resulted from a single transaction. Despite the limited conduct underlying Mr. Garland's conviction, and the number of mitigating factors introduced by Plaintiffs, the Debarring official debarred plaintiffs for six years, *two times* the general permitted

19

period of debarment.  24 C.F.R. § 24.865(a).  Debarment is considered a "serious action" that

only can be used by HUD to "protect the public interest," and not for the purpose of punishment.

24 C.F.R. § 24.125(c).  Even when debarment is deemed appropriate, the period of debarment

must be "based on the seriousness of the cause(s) upon which [a] debarment is based."  24

C.F.R. § 24.865(a) and the debarring official must consider mitigating factors.  24 C.F.R.

§ 24.860.

        Where the cause for debarment is a criminal conviction, the regulations provide that the

period of debarment "[g]enerally . . . should not exceed ***three years***" unless circumstances

warrant a longer period.  C.F.R. § 24.865(a) (emphasis added).  Moreover, when determining the

period of debarment, "if a suspension has preceded [the] debarment, the debarring official must

consider the time [an individual or entity] was suspended."  24 C.F.R. § 24.865(b).  Plaintiffs

admit that Mr. Garland's conviction is a cause for debarment.  The six-year debarment ordered

by the Debarring Official is arbitrary, capricious, and an abuse of discretion in that the Debarring

official failed to consider and give proper weight to many of the mitigating factors raised by

Plaintiffs and the length of the debarment is excessive and improperly punitive when compared

with the debarments ordered in similar cases.

> **a.**    **The Debarring Official Failed To Consider And Did Not Give
> Proper Weight To The Mitigating Factors Presented By
> Plaintiff**

        The Debarring Official must consider the mitigating factors set forth in 24 C.F.R.

§ 24.860 in determining whether debarment is appropriate and/or the appropriate length of

debarment.  Where the Debarring Official does not properly consider the mitigating factors or

does not explain why such mitigating factors are not relevant, the decision must be set aside as

irrational.  *Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924 at *16-17 (D.D.C.

July 16, 2007) (holding that because the debarring official "did not in any way explain his decision to impose debarment rather than a lesser sanction, given the strength of the mitigating factors, the Court cannot conclude that that decision was rational or that [the debarring official] satisfied the procedures . . ." at issue); *accord Roemer v. Hoffmann*, 419 F. Supp. 130, 132 (D.D.C. 1976); *Silverman v. United States Dept. of Defense*, 817 F. Supp. 846, 849 (S.D. Cal. 1993).

The Plaintiffs offered the following mitigating factors:[10]

(1)  Mr. Garland changed the scope, nature, and staffing at GCI, specifically those employees involved in the criminal transaction no longer work for GCI and management has been delegated to an employee of unquestionable character.  A.R. 200-202, 433 at ¶ 5, 436-437 at ¶¶ 1-7, 9-11; Sup. A.R. 867-870, 876-77, 879; *see, e.g.*, 24 C.F.R. § 24.860 (q), (r), (s); *In re S.D. Carruthers Sons, Inc.*, HUDBCA No. 95-A-124-D17, 1996 HUD BCA LEXIS 8 at *13 (June 28, 1996) ("Indicative of Respondents' present responsibility is the fact that Respondents have taken steps to ensure that the actions for which SDC was convicted do not occur in the future.").  *cf. In re Ted Dalton*, HUDBCA No. 90-5246-D23, 1991 HUD BCA LEXIS 1 at *10 (Jan. 14, 1991) (noting that "[t]he interests of the Government can be sufficiently protected where an individual or entity, which has been barred from doing business with the Government as a result of the imposition of an administrative sanction, is no longer engaging in similar potentially detrimental conduct").

(2)  Mr. Garland pled guilty to *one* crime based on *one* discrete transaction that occurred over six years before the debarment hearing, has not had any other misconduct, and has taken steps to prevent similar conduct from occurring.  *See supra*, mitigating factor 1 and A.R. 206,

_____

[10] The Government did not provide any evidence in opposition to the evidence of mitigation offered by Plaintiffs.

211, 254; Sup. A.R. 867-873, 876-877; *see also*, *e.g.*, 24 C.F.R. § 24.860(b), (c) (d); *Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924 at *16-17 (D.D.C. July 16, 2007) (noting that a "spotless record before [the] criminal offense" and "the fact that five years had passed without incident since the offense" should have been considered as evidence in mitigation); *In re James Webb*, No. 92-G-7709-D60, 1992 HUD BCA LEXIS 11 at *7-8 (Oct. 1, 1992) ("This Board has viewed a substantial passage of time as a mitigating factor in determining the length of an administrative sanction"); *In re Allen Griffey*, 1991 HUD BCA LEXIS 7 at *7-8 (same).

(3)  Mr. Garland paid HUD more than full restitution.  A.R. 207-210, 442-444, 446-468, 470-478, 481-520; Sup. A.R. 857-858, 876-877; *see, e.g.*, 24 C.F.R. § 24.860 (g), (h); *In re Allen Griffey*, 1991 HUD BCA LEXIS 7 at *8-9.

(4)  Over 100 letters written on behalf of Mr. Garland's demonstrate that he is a man of integrity and honesty, notwithstanding this one aberrational incident.  A.R. 211, 540-701; Sup. A.R. 876; *see, e.g.*, 24 C.F.R. § 24.860 (b), (c), (s); *In re James Webb*, 1992 HUD BCA LEXIS 11 at *9-10; *In re Allen Griffey*, 1991 HUD BCA LEXIS 7 at *8-9.

The Debarring Official recognized that Mr. Garland raised some of these mitigating factors.  AR 705-707.  However, without explanation, the Debarring Official did not acknowledge the staff changes made at GCI in making her determination.  *Id*.  Nor did the Debarring Official give any weight to the fact that the misconduct occurred over six years before the proceeding and that Mr. Garland had not been involved in any subsequent misconduct, or explain why this mitigating evidence was not relevant.  *Id*.  The Debarring Official likewise did not give any consideration to the fact that this was Mr. Garland's only misconduct, in an otherwise distinguished career, or to the voluminous letters attesting to Mr. Garland's integrity and honesty.  *Id*.  Moreover, rather than treating Mr. Garland's payment of more than full

restitution as a mitigating factor, the Debarring Official improperly considered it as an aggravating factor.  The Debarring Official found that the civil settlement, and not the amount of loss determined by the Pennsylvania Court, was the "actual harm" caused by Mr. Garland's conduct.  *Compare* A.R. 51 (Judgment) and 371 (Sentencing Hearing) (finding that the transaction underlying Mr. Garland's conviction caused a loss of approximately $57,000), *with* Defs.' Mem. at p. 20 (emphasis added) (noting that that the Debarring Official found "$1,150,000 *in actual harm* resulting from Garland's criminal conduct" and considered this in her determination); A.R. 849; *see also* Sup. A.R. 865 (Government attorney arguing that the civil settlement should be considered as "evidence in aggravation" under the "*res gestae* rule of evidence").

While the Debarring Official acknowledged the remaining mitigating factors, she did not "explain why [she] gave them so little weight, [which] makes it impossible to evaluate whether there was a 'rational connection' between the facts of [the] case" and the debarment imposed.  *See Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924 at *17 (D.D.C. July 16, 2007); *accord Roemer v. Hoffmann*, 419 F. Supp. 130, 132 (D.D.C. 1976).  The term of Plaintiffs' debarment "is thus inexplicably lengthy, owing … to [the Debarring Official's] … refusal to consider the mitigative facts surrounding the conviction."  *Silverman v. United States Dept. of Defense*, 817 F. Supp. 846, 849 (S.D. Cal. 1993).

> **b.    A Six Year Period Of Debarment Is Unwarranted When The Facts Of This Case Are Compared To Similar HUD Debarment Decisions**

The Debarring Official should have compared the narrow conduct underlying Mr.

Garland's guilty plea with the facts in similar HUD decisions when determining whether

Plaintiffs should have been debarred for six years.

> Debarment proceedings are subject to the same standards of basic fairness as other judicial and administrative proceedings. It may well be fundamentally unfair to permit one contractor to do business with this Department, and debar another contractor when both contractors were convicted of the same offense and both contractors received the same sentence.

*In re S.D. Carruthers Sons, Inc.*, HUDBCA No. 95-A-124-D17, 1996 HUD BCA LEXIS 8 at

*14 (June 28, 1996) (internal citation omitted); *accord Gonzales v. Freeman*, 334 F.2d 570, 577

(D.C. Cir. 1964) (noting that "to the debarment power there attaches an obligation to deal with

uniform minimum fairness a to all"); *Caiola v. Carroll*, 851 F.2d 395, 400 (D.C. Cir. 1988); *cf.*

*Airmark Corp. v. Fed. Aviation Admin.*, 758 F.2d 685, 691 (D.C. Cir. 1985) (citation and

quotation omitted) (noting the FAA's inconsistent application of decisional criteria and stating

that agencies do not have "license to . . . treat like cases differently"); *Democratic Union*

*Organizing Committee, etc. v. NLRB*, 603 F.2d 862, 869-872 (D.C. Cir. 1978) (referring to

NLRB's inconsistent determination of "employee" versus "independent contractor" status and

stating that "[t]he Board cannot, despite its broad discretion, arbitrarily treat similar situations

dissimilarly"); *United States v. Diapulse Corp. of Am.*, 748 F.2d 56, 62 (2d Cir. 1984) (noting

FDA's inconsistent treatment of producers of two similar medical devices and holding that

"[d]eference to administrative discretion or expertise is not a license to a regulatory agency to

treat like cases differently.").

The HUD Board of Contract Appeals has expressly "found that the Government has generally proposed three-year debarments for violations involving fraud and misrepresentation." *In re Charles Kirkland*, HUDBCA No. 5285-D57, 1991 HUD BCA LEXIS 3 at *11-12 (Jan. 14, 1991) (collecting cases) (stating that "[a]lthough the Government has clearly established cause for debarment, I am not persuaded that the record in this case, when compared with the facts considered in analogous decisions by this Department's judicial officers, supports a need to impose a five-year period of debarment."). "[O]nly serious and recent violations of law or appalling irregularities should be the cause for a debarment of three years or greater." *In re Allen Griffey*, HUDBCA No. 90-5349-D89, 1991 HUD BCA LEXIS 7 at *10 (March 14, 1991).

When the facts surrounding Mr. Garland's conviction are compared with the facts considered in similar decisions, it is apparent that debarment in excess of the generally permitted three years – such as the six years ordered here – is inappropriate. *See, e.g., In re Terence J. McCarthy*, HUDBCA No. 93-G-D50, 1993 HUD BCA LEXIS 18 at *2-3 *11-13, (Nov. 19, 1993) (collecting cases) (holding that a conviction on two counts of making false statements to the U.S. Government, and no mitigating circumstances, "fit precisely within the causes which the regulation sets forth as calling for no more than a three year debarment" ); *Howard L. Perlow*, HUDBCA No. 92-7131-D5, 1992 HUD BCA LEXIS 17 (Dec. 3, 1992) (Respondent who pled guilty to fraudulent misappropriation of approximately $300,000 was debarred for a period of three years); *In re Edward Louis Charles*, HUDBCA No. 79-378-D29, 1980 HUD BCA LEXIS 22 at *2, 8-9 (May 8, 1980) (reversing five year debarment and imposing two year debarment where respondent was convicted for three counts of making false statements to the Veterans Administration and the Government presented evidence of failure to disclosure similar fraudulent activity by his employer in connection with FHS mortgage insurance noting that that

25

appellant "engaged in a course of conduct over an extended period of time that violated a criminal statute and demonstrated a willful and criminal disregard for the public interest in this Department's laws and regulations"); *cf. In re Charles Kirkland*, 1991 HUD BCA LEXIS 3 at *11-13 (collecting cases).

Plaintiffs do not contend that HUD does not have the ability to impose a debarment beyond three years when the circumstances warrant such extreme action. However, the facts of this case do not present such a circumstance. For this reason, Defendants' citations to *Coccia v. Defense Logistics Agency* and *Burke v. United States Environmental Protection Agency* are inapposite. Defs.' Mem. at pp. 22-25. The facts of this case do not present the "appalling irregularities" or refusal to take responsibility and implement changes seen in the cases on which Defendants rely. *In re Allen Griffey*, HUDBCA No. 90-5349-D89, 1991 HUD BCA LEXIS 7 at *10 (March 14, 1991). To the contrary, the Defendants simply claim that these cases establish that the six year debarment ordered in this case is warranted "[g]iven that plaintiffs' debarments were based on Philip Garland's conviction for a crime requiring specific intent . . . ." Defs.' Mem. at 26. However, the cases cited above demonstrate that such debarments are normally limited to three years.

*Coccia* dealt with a plaintiff that "corrupted that system for a *ten year period* by interfering with the confidentiality of the bid process and giving secret price information to the contractors who bribed him." *Coccia*, No. 89-6544, 1992 WL 345105 at * 4 (E.D. Pa. Nov. 12 1992) (emphasis added). The plaintiff's crime was so prolonged and so severe that he was sentenced to ten years federal incarceration, five years probation, fined $50,000 and forfeited $331,000 to the Government. *Id.* at *1. Moreover, the Debarring Official found that the plaintiff "did not understand, appreciate or feel remorse for the serious impact his criminal conduct had

on the Government procurement system[,]" rather the plaintiff claimed that "the system was at fault." *Id*. at *4.

Similarly, in *Burke*, the court found that the plaintiff "ha[d] not presented persuasive evidence of altered personal business conduct which demonstrates that he now does not pose a risk to the government" and failed "to take personal responsibility for his offense, and his direct control of and involvement with [his company] and the Landfill." *Burke*, 127 F. Supp. 2d 235, 241-42 (D. D.C. 2001) (internal quotation and citation to A.R. omitted). Moreover, despite Defendants' claims that the debarment in *Burke* was based solely on *negligent* conduct, Def.'s Brief at p. 24, the Court expressly found that the agency properly evaluated the plaintiff's "criminal offense in light of [his company's] fraud and deceit" for which his company pled guilty to "criminal conspiracy and was fined $1.8 million[.]" *Id*. at 240. (citation omitted) ("noting that in a debarment action an agency may impute improper conduct from one affiliate to another if one controls or can control the other"). Nonetheless, Burke was sentenced to a shorter length of debarment than Plaintiffs were in this case. *Id*. at 241.

Notably, the Court in *Burke* made clear that it was proper to entertain the "argument that other [agency] debarment decisions suggest that a longer debarment period is unwarranted" but found the other agency decision raised by the plaintiff distinguishable. *Id*. at 242 and n.10; *compare* Defs.' Mem. at pp. 23-24 (claiming that fairness does not dictate "uniformity in result"). As discussed above, the Plaintiffs presented many mitigating factors, including that Mr. Garland's misconduct was limited to a discrete transaction that occurred over six years before the debarment hearing, has not had any other misconduct, and has taken steps to prevent similar conduct from occurring. A.R. 199-202, 206, 211, 243-244 at ¶¶ 87-91, 254, 433 at ¶¶ 4-5, 436-437 at ¶¶1-11, 540-704. Mr. Garland changed the scope, nature, and staffing at GCI. Those

employees involved in the criminal transaction no longer work for GCI and management has

been delegated to an employee of unquestionable character.  A.R. 200-202, 433 at ¶ 5, 436-437

at ¶¶ 1-7, 9-11.  Finally, Mr. Garland paid HUD more than full restitution.  A.R. 207-210, 442-

444, 446-452, 464-468, 470-478, 481-488.  The facts surrounding Mr. Garland's conviction

make apparent that debarment in excess of the generally permitted three years – such as the six

years ordered here – is inappropriate.

For the forgoing reasons, the six-year debarment ordered by the Debarring Official is

excessive and improperly punitive and must be set aside as irrational.  The debarment decision is

arbitrary, capricious, and an abuse of discretion as a matter of law and Plaintiffs are entitled to

summary judgment on Count I.

      **B.**      **The Debarment Official's Determination Violated Plaintiffs' Right To Procedural Due Process Because The Debarment Official Based Its Findings On Collateral Allegations Not Established By Mr. Garland's Conviction And Denied Plaintiffs' The Right To An Evidentiary Hearing**

The Debarment Official's Determination violated Plaintiffs' right to procedural due

process because the Debarment Official based its findings on collateral allegations not

established in Mr. Garland's criminal conviction, although Mr. Garland's criminal conviction

was the only basis for debarment of which Plaintiffs were given notice.  Moreover, Plaintiffs

were denied the right to an evidentiary hearing on these collateral allegations.  The lack of notice

and denial of an evidentiary hearing was not in accordance with the regulations governing HUD

debarment actions and, in any event, due process requires the right to notice and an evidentiary

hearing in these circumstances.

1.    **The Debarment Violated Plaintiffs' Due Process Rights Because The Debarment Official Did Not Comply With The HUD Debarment Regulations, Which Require Notice And An Evidentiary Hearing Where The Government's Allegations Exceed The Facts Established In An Underlying Conviction And There Is A Genuine Dispute Of A Material Issue Of Fact**

It is well established that "a federal agency is obliged to abide by the regulations it promulgates." *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir 1998); *accord Eugene Burger Mgmt. Corp. v. United States Dept. of Housing and Urban Dev.*, No. 01-1701, 2002 U.S. Dist. LEXIS 8442 at *4 (D.D.C. May 9, 2002). "Once [the agency] has determined that it should no longer do business with the plaintiff[s], fair play and due process dictates [the agency] follow its debarment procedures, put the plaintiff[s] on notice and conduct the necessary hearings before making a determination." *Leslie & Elliott Co. v. Garrett*, 732 F. Supp. 191, 196 (D.D.C. 1990) (construing actions by the Navy); *accord Sameena, Inc.*, 147 F.3d at 1153-1154 (holding that the "Air Force violated the appellants' constitutional right to due process" by denying them an evidentiary hearing as required by binding regulations); *accord Mirza Ali v. Health and Human Servs. Dept. of Social Servs.*, No. 97-15264, 1998 U.S. App. LEXIS 15346 at *5 (9th Cir. July 6, 1998) (concluding "that [the agency] violated [respondent's] right to due process by failing to hold an evidentiary hearing. . . .").

The regulations governing HUD debarment proceedings provide that respondents will be provided notice and that respondents "will have an additional opportunity to challenge the facts if the debarring official determines that – (1) the conditions in paragraph (a) of this section do not exist; and (2) [respondents'] presentation in opposition raises a genuine dispute of facts material to the proposed debarment." 24 C.F.R. § 24.830(b); 24 C.F.R. § 24.805(b) (requiring notice "[o]f the reasons for proposing to debar you in terms sufficient to put you on notice of the conduct or transactions upon which the proposed debarment is based."). While 24 C.F.R.

§ 24.830(a)(1) states that there is no "additional opportunity to challenge the facts" where the "debarment is based upon a conviction….", this prohibition only relates to the facts <u>established</u> in the underlying conviction.  *Cf. Silverman v. United States Department of Defense*, 817 F. Supp. 846, 849 (S.D. Cal. 1993); *see also* discussion *supra* at pp. 14-16.  As the Southern District of California explained, "[t]he facts underlying a conviction are, logically not subject to dispute in a debarment proceeding, having been established beyond a reasonable doubt by the criminal adjudication."  *Silverman,* 817 F. Supp. at 849.  However, this logic does not extend to facts not established in the criminal adjudication.

It is well established that "in the absence of other bases for the proposed debarment, only the facts relevant to [the] guilty plea can be considered. . . ."  *In re Howard L. Perlow*, HUDBCA No. 92-7131-D5, 1992 HUD BCA LEXIS 17 at * 18 (Dec. 3, 1992).  Moreover, the debarment may not be based on "allegations *not proven* as a collateral basis for pursuing this sanction."  *See id*. (emphasis added); *accord Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924 at *20-23 (D.D.C. July 16, 2007) (finding debarment improper where the Debarring Notice improperly described plaintiff's conviction, noting that debarring official "appears to have based his decision to debar her on a conviction that never occurred"); *In re Edward Louis Charles*, HUDBCA No. 79-378-D29, 1980 HUD BCA LEXIS 22 at *2-6, 8 (May 8, 1980) (evidentiary hearing held where respondent's guilty plea and conviction was sufficient cause for debarment but the Government sought to have other facts in the indictment considered).

The Debarment Notices sent to Plaintiffs are consistent with this logical interpretation of the regulations.  Although the Debarment Notices stated Mr. Garland's conviction as the sole basis for debarment, each Notice stated that "[i]f I [Margarita Maisonet, the Debarment Official] determine that a genuine dispute over material facts exists, I *will* refer this matter to a Hearing

Officer, who is an administrative judge, for a formal hearing to making findings of fact pursuant to 24 CFR Section 24.845." A.R. 2, 4, 7 (emphasis added); *accord* Compl. at ¶23 (noting that the Debarring Official's designee stated that he could recommend an evidentiary hearing be conducted if there were factual disputes); Answer at ¶ 23 (admitting same).

Mr. Garland's conviction was for a *single transaction* that caused harm of approximately $57,000. AR 53-58 (Plea Agreement); A.R. 42, 51 (Judgment); 177-78 (Guilty Plea Colloquy); 363, 366, 371 (Sentencing Hearing). Nonetheless, in the Government's Pre-Hearing Brief in Support of An Indefinite Debarment the Government proffered that Mr. Garland engaged in multiple fraudulent transactions and caused a loss beyond the single transaction for which Mr. Garland convicted, as a collateral basis for his debarment. A.R. 35, 37-38, *see also supra* pp. 17-19. Plaintiffs' vigorously contested these collateral allegations. A.R. 203-205, 207-210, 446-520; Sup. A.R. 870-77.

Prior to the debarment hearing, Plaintiffs' counsel advised that there was no evidentiary support for the Government's collateral allegations and demanded that a hearing be conducted at which evidence in support of the allegations could be introduced if they were to be to be relied upon. *See* Compl. at ¶¶ 21-23, Answer at ¶¶ 21-23. Defendant Maisonet's Designee Stated that he would need to determine whether there were any factual disputes and if so, he could recommend that an evidentiary hearing be held to resolve those factual disputes. No evidentiary hearing was recommended or held. Compl. at ¶ 23, Answer at ¶ 23.

As it turned out, the Government's arguments at the debarment hearing mirrored those in its Brief and the Debarring Official erroneously adopted the unsupported allegations as fact without affording Plaintiffs the evidentiary hearing to which they were entitled. *Compare* Sup. A.R. 859 (Government attorney arguing: "Yeah, I think that the Debarring Official will note that

there is a significant difference between the $57,000 and some hundreds of dollars, that was adjudged a loss with the one, uh, Count that was pled to for that one home, versus the entire amount that was paid in restitution."); *with* 873 (Debarring Official's designee stating that "I don't speak on behalf of the Debarring Official, but of course there's been a million dollar restitution and your, if, but seemingly without an exact determination of loss.  So how, common sense wise, do we say well this was one transaction and there was, that involved $57,000, but here is a million dollar restitution"); *see also* Supp. A.R. 856-858 (Government attorney arguing that "full restitution" was the entire amount of the civil settlement, including, false claim act penalties), 865 (Government attorney arguing the civil settlement should be considered as "evidence in aggravation" under the "*res gestae* rule of evidence"), 874-75 (Government attorney arguing that "although they involve a conviction on one count, the Settlement Agreement is a document and is the basis for that eventual conviction. . . .").  Plaintiffs renewed their request for an evidentiary hearing if the Government was going to assert that Mr. Garland was involved in improper conduct beyond the single transaction underlying his guilty plea or that his conduct cause a loss in excess of the approximately $57,000 that was determined in the criminal action.  Sup. A.R. 870-77.

However, no evidentiary hearing was granted and the Debarring Official based her decision on the Government's collateral allegations that Mr. Garland engaged in *multiple* fraudulent transactions and caused $1.15 million in "actual harm"; allegations that have never have been proven and which Plaintiffs vigorously contested.  *Compare* A.R. 705-706, 849-850, Defs.' Mem. at p. 20; Defs.' Statement of Facts at ¶¶ 23-25; *with* A.R. 109-110 at ¶ 7, 177-78 (Guilty Plea Colloquy), 203-205, 207-210, 446-520; Sup. A.R. 870-77; *see also* A.R. 51 (Judgment), 363, 366, 371 (Sentencing Hearing).

As such, the Debarring Official denied Plaintiffs' their right to due process by failing to follow the pertinent regulations in (1) allowing the Government to assert collateral allegations not established in Mr. Garland's underlying conviction where the Debarring Notice referred to Mr. Garland's conviction as the only basis for debarment; and (2) failing to grant an evidentiary hearing requiring the Government to present evidence supporting its collateral allegations and allowing Plaintiffs to present evidence refuting such allegations.

Following the Defendants' suggestion that the regulations should be interpreted as *never* allowing a respondent an evidentiary hearing to challenge the facts asserted by the Government when the debarment is based upon a conviction will have improper and unconstitutional implications.[11]   Defs.' Mem. at p. 14-15 n.27; *cf. Initiative & Referendum Inst. v. United States Postal Serv.*, 417 F.3d 1299, 1316 (D.C. Cir. 2005) (noting that regulations should be construed to avoid constitutional problems, if possible); *see infra* pp. 34-39 (discussing that due process requires an evidentiary hearing in this circumstance).   Defendants' interpretation would allow the Government to allege facts not established in the underlying conviction to support the proposed debarment, without any evidentiary support, and prevent the respondents from receiving a full and fair opportunity to contest such collateral allegations.   *Cf. Canales*, 2007 U.S. Dist. LEXIS 50924 at *20-23.   Indeed, that is precisely what occurred in this case.

---

[11]   The interpretation now suggested by Defendants' is not entitled to deference. *See Caiola v. Carroll*, 851 F.2d 395, 399 (D.C. Cir. 1988) (noting that interpretation by a debarring official, in contrast to that of the head of the agency, is not entitled to "considerable deference" and is not given "dispositive weight" but is merely entitled to a "modicum of respect"); *Canales v. Paulson*, No. 06-1330, 2007 U.S. Dist. LEXIS 50924 at *11-12 (D.D.C. July 16, 2007) (quoting *Ace Motor Freight, Inc. v. I.C.C.*, 557 F.2d 859, 864 (D.C. Cir. 1977) (noting that "a court may consider only the rationale an agency gives for its actions at the time they occur and not 'post hoc rationalizations by … government agency counsel.'").   Notably, the statements made by HUD throughout the debarment process, that an evidentiary hearing would be held if the Debarring Official determined that a dispute of fact existed, support Plaintiffs' argument, and directly undermine the interpretation of HUD regulations Defendants now assert. *See* A.R. 2, 4, 7; Compl. at ¶ 23, Answer at ¶ 23.

For the foregoing reasons, the Defendants' failure to comply with HUD's regulations and failure to provide Plaintiffs' an evidentiary hearing on facts not established by Mr. Garland's criminal conviction was a violation of the Plaintiffs' due process rights as a matter of law and Plaintiffs are entitled to summary judgment on Count II.

> **2.    Procedural Due Process Requires An Evidentiary Hearing To Determine Genuinely Disputed Issues Of Material Fact Before A Final Determination Concerning The Length Of Debarment Can Be Entered Where The Facts Have Not Been Established By A Conviction Or Civil Judgment**

To the extent the HUD regulations are interpreted to deny Plaintiffs an evidentiary hearing on genuinely disputed issues of material fact simply because the debarment is based, *in part*, on a conviction, such regulations are insufficient to provide procedural safeguards sufficient to protect the Plaintiffs' property and liberty interests against unwarranted infringement and thereby violate the requirements of procedural due process. It is well established that "formally debarring a corporation from government contract bidding constitutes a deprivation of liberty that triggers the procedural guarantees of the Due Process Clause." *Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003) (finding that the informal conduct at issue did not amount to the equivalent of formal debarment). The determination of what process is due is determined by a balancing test:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

In this case, Plaintiffs' "right to … follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' … concept[] of the Fifth Amendment."

*Trifax Corp.*, 314 F.3d at 643 (quoting *Greene v. McElroy*, 360 U.S. 474, 492 (1959)). The failure to require the Government to present evidence supporting its collateral allegations that were not established beyond a reasonable doubt in Mr. Garland's criminal conviction, and the failure to allow Plaintiffs to present his own testimony rebutting such allegations, presents a serious risk of an erroneous deprivation of the Plaintiffs' liberty interests. In fact, in this case it has allowed the Debarring Official to adopt the Government's allegations that Mr. Garland engaged in multiple fraudulent transactions and caused "actual damage" of $ 1.15 million, without evidentiary support, simply because Mr. Garland was convicted for one transaction, even though charges for the conduct collaterally alleged by the Government were dismissed. *Compare* A.R. 53-58 (Guilty Plea); 177-78, 189-190 (Guilty Plea Colloquy); 363, 366, 394 (Sentencing Hearing), *with* A.R. 35, 37-38 (Gov't Brief), 705-506 (Debarment Official's Determination); Defs.' Mem. at pp. 20-22; Sup. A.R. 870-77.

An evidentiary hearing would require the Government to introduce evidence in support of its allegations that Mr. Garland engaged in multiple fraudulent transactions and that Mr. Garland's conduct caused more loss to HUD than found by the Pennsylvania Court in Mr. Garland's criminal proceeding, allegations that Plaintiffs vigorously contested. *Compare* A.R. 705-706, 849-850, Defs.' Mem. at p. 20; Defs.' Statement of Facts at ¶¶ 23, 25; A.R. 109-110 at ¶ 7, A.R. 203-205, 207-210, 446-520; Sup. A.R. 870-77; *see also* A.R. 51 (Judgment), 177-78 (Guilty Plea Colloquy); 363, 366, 371 (Sentencing Hearing). Such a hearing would also allow Plaintiffs to rebut such evidence.

The Government's interest does not outweigh the benefits discussed above. HUD already has procedures for conducting hearings when disputed issues of material fact arise and it would not entail a substantial administrative burden. 24 C.F.R. § 24.830(b); 24 CFR § 24.845;

A.R. 2, 4, 7 (Debarment Notices).  In fact, the Debarment Notice given to Plaintiff expressly

stated that an evidentiary hearing would take place if Plaintiffs raised a disputed issue of material

fact:  "If I [Margarita Maisonet, the Debarment Official] determine that a genuine dispute over

material facts exists, I will refer this matter to a Hearing Officer, who is an administrative judge,

for a formal hearing to making findings of fact pursuant to 24 CFR Section 24.845."  A.R. 2, 4, 7

(Debarment Notices); *accord* Compl. at ¶23 (noting that the Debarring Official's designee stated

that he could recommend an evidentiary hearing be conducted if there were factual disputes);

Answer at ¶ 23 (admitting same).

Finally, the fiscal burden is warranted for the same reason evidentiary hearings are

normally permitted where genuine disputes over material facts exist.  If the Government is

concerned about limiting the fiscal burden where the respondent at issue has engaged in conduct

resulting in a criminal conviction that forms the basis for debarment, they may limit their

allegations to the facts which were established by the conviction.  However, where, as here, the

Government offers disputed allegations that were not established by the respondent's conviction,

an evidentiary hearing is necessary.

This result is consistent with existing case law holding that the right to an evidentiary

hearing is required by due process in the case of formal debarment where there is a genuine

dispute of material fact.  In *Cosmic v. Marshall*, the District of New Jersey explained that:

> Fundamental fairness requires confrontation and cross-examination in a case such
> as the present one, where issues of fact and credibility are hotly disputed by the
> parties.  The [agency's] failure to provide confrontation and cross-examination
> before placing Cosmic on the debarment list, therefore, violated the Fifth
> Amendment's Due Process guarantee.

*Cosmic*, No. 80-3321, slip. op. (D.N.J., March 2, 1981) (quoted in *Titan Construction Co., Inc. v.

Weinberger*, No. 85-5533, 1986 U.S. Dist. LEXIS 29232 at *21-22 (D. N.J. Feb. 14, 1986)

36

(emphasis omitted) (finding evidentiary hearing unncessary where there was no disputed issue of material fact)).[12]

      Similarly, in *Gonzalez v. Freeman*, the Court held that in debarment proceedings,

> [c]onsiderations of basic fairness require administrative regulations establishing standards for debarment and procedures which will include notice of specific charges, opportunity to present evidence and to cross-examine adverse witnesses, all culminating in administrative findings and conclusions based upon the record so made.

334 F.2d 570, 578 (D.C. Cir. 1964). In *Gonzalez*, the plaintiffs were suspended for five years beginning while an "investigation into possible misuse of official inspection certifications relating to commodities exported to Brazil by Gonzalez Corporation" took place. *Id*. at 572. Thomas P. Gonzales ("Gonzalez"), one of the plaintiffs, was individually indicted on felony charges for the "alleged misuse of the official inspection certificates referred to in the … notice of temporary suspension." *Id*. On January 15, 1962 Gonzalez "entered a plea of guilty to a misdemeanor based on essentially the same acts." *Id*. On May 24, 1962 "after consideration of information and arguments submitted by [plaintiffs] … [the plaintiffs] were suspended for five years from the date of the original temporary suspension." *Id*. The notice of final suspension "stated no reasons or grounds for the final debarment action." *Id*. The plaintiffs instituted a declaratory judgment action to determine the debarment invalid. *Id*. at 573.

      The Court held that the debarment was invalid as there were no established regulations and the defendants "acted in excess of powers granted * * * by congress" by denying the

---

[12] In this case there were clearly disputed issues of material fact concerning the scope of Mr. Garland's alleged criminal conduct and the harm caused by such conduct. *See supra* pp. 1-11, 16-19, 30-32; *see also* Sup. A.R. 870-77. Moreover, the Debarring Official made factual findings, which suggest that the Debarring Official may have "implicitly determined that a genuine issue of fact *did* exist" since "[she] had no obligation to produce such findings if [she] determined … that there was no genuine issues of material fact. . . ." A.R. 705-706; *Eugene Burger Mgm't Corp. v. HUD*, No. 01-1701 (HHK/JMF), 2002 U.S. Dist. LEXIS 8442 at * 9-10 (D.D.C. May 9, 2002) (emphasis original).

plaintiffs the "[c]onsiderations of basic fairness[.]"  *Id* at 576-579 (citation and quotation

omitted).  The Court noted that "to reach any other conclusion would give rise to serious

constitutional issues."  *Id*. at 579.  While the Court did not reach the plaintiff's due process

claim, having found the debarment action otherwise invalid, the Court commented on the

necessary procedure:

> To suggest the need for procedural safeguards does not mean that the full trial-
> type panoply of due process is commanded in all case.  However defined or
> classified the individual interest is one that is protected by concepts of
> fundamental fairness and by some procedure, as we have already indicated, as the
> basic elements of published standards, notice, grounds, opportunity to respond
> and be heard and, subject only to essential national security considerations, to
> cross-examine those whose information is used as a bases for an adverse decision.

*Id*. at 576, 579-80 and n.21.  Other courts have relied on *Gonzalez* in determining the procedure

required in debarment hearings under due process.  *See, e.g.*, *Art-Metal USA, Inc. v. Solomon*,

473 F. Supp. 1, 6-7 (D.D.C. 1978) (citing, *inter alia*, *Gonzalez*) (noting that "it is clear at the

outset that due process of law requires that before a contractor may be blacklisted (whether by

debarment or suspension) he must be afforded specific procedural safeguards, including Inter

alia, [sic] a notice of the charges against it, an opportunity to rebut those charges and, under most

circumstances, a hearing."); *see also Myers & Myers, Inc. v. USPS*, 527 F.2d 1252, 1259 (2d Cir.

N.Y. 1975); *cf. Berlanti v. Bodman*, 780 F.2d 296, 299-300 (3d Cir. 1985) (internal citation and

quotation omitted) (construing New Jersey law and noting that the New Jersey Supreme Court's

reliance on *Gonzalez* for the proposition that "[p]rocedural safeguards, including notice, hearing,

the right to present evidence, and the right to cross examine an adverse witness must be afforded

to those individuals facing debarment.").

For the foregoing reasons, Defendants failure to provide Plaintiffs' an evidentiary hearing on facts not established by Mr. Garland's criminal conviction was a violation of the Plaintiffs' due process rights and Plaintiffs are entitled to summary judgment on Count II.

## V.    Conclusion

The six-year debarment ordered by the Debarring Official is arbitrary, capricious, and an abuse of discretion in that it is based on unsubstantiated factual findings beyond the facts underlying Mr. Garland's criminal hearing for which Plaintiffs were denied an evidentiary hearing, and the length of the debarment is excessive and improperly punitive as a matter of law. Moreover, Defendants' failure to comply with HUD's regulations and failure to provide Plaintiffs' an evidentiary hearing on facts not established by Mr. Garland's criminal conviction was a violation of the Plaintiffs' due process rights as a matter of law.  There is no dispute of material fact and judgment should be granted in favor of Plaintiffs on both Counts of their Complaint.

Plaintiffs respectfully request this Honorable Court reverse Defendants' decision to debar Plaintiffs for a period for six years from procurement and non-procurement transactions with HUD, issue a finding that a three year debarment with credit given for the 18 months Plaintiffs was appropriate as a matter of law, and order Plaintiffs' debarment be terminated immediately as a three year debarment should have ended February 24, 2008.  Alternatively, the Plaintiffs request the Court reverse and remand with directions to provide Plaintiffs with an evidentiary hearing to contest the allegations presented by the Government that are beyond the factual record

created through the court proceedings underlying Mr. Garland's plea agreement and properly

consider the mitigating factors raised by Plaintiffs and properly consider the facts of the case,

including mitigating factors.


                Respectfully submitted,


July 30, 2008               /s/ Ellen C. Brotman
                  Ellen C. Brotman
                  ID # 71775
                  Montgomery, McCracken,
                    Walker & Rhoads, LLP
                  123 South Broad Street
                  Philadelphia, PA  19109
                  215-772-1500
                  Fax No. 215-772-7620
                  ebrotman@mmwr.com

<u>CERTIFICATE OF SERVICE</u>

I certify that copies of Plaintiffs' Motion for Summary Judgment, Memorandum of Law

in Opposition to Defendants' Motion for Summary Judgment and In Support of Plaintiffs' Cross-

Motion For Summary Judgment, Plaintiffs' Statement of Material Facts as to Which There is No

Genuine Issue and Plaintiffs' Concise Response to Defendants' Statement of Material Facts as to

Which There is no Genuine Issue were sent on this date by electronic filing to:

> Marina Utgoff Braswell, Esquire
> U.S. Attorneys Office for the
>   District of Columbia
> 555 Fourth Street, NW
> Room 10-413
> Washington, DC  20530

Respectfully submitted,

July 30, 2008

/s/ Ellen C. Brotman
Ellen C. Brotman
ID # 71775
Montgomery, McCracken,
  Walker & Rhoads, LLP
123 South Broad Street
Philadelphia, PA  19109
215-772-1500
Fax No. 215-772-7620
ebrotman@mmwr.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PHILIP GARLAND et al.,                         :
                                               :
        Plaintiffs,                            :
                                               :
        v.                                     :        Civil Action No. 07-1641 (RWR)
                                               :
U.S. DEPARTMENT OF HOUSING AND  :
URBAN DEVELOPMENT et al.,                      :
                                               :
        Defendants.                            :
_____

ORDER

        AND NOW, this ___ day of _____, 2008, upon consideration of Defendants' Motion

for Summary Judgment, Plaintiffs' Opposition thereto and Cross-Motion for Summary

Judgment, and any responses and replies thereto, it is hereby ORDERED that Defendants'

Motion for Summary Judgment is DENIED.

        t is further ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED.

Defendants' decision to debar plaintiffs for a period for six (6) years from procurement and

nonp-rocurement transactions with HUD is REVERSED.  This Court finds that Plaintiffs'

debarment should have been limited to three (3) years debarment with credit given for the 18

months Plaintiffs were suspended.  As such Plaintiffs' debarment should have ended February

24, 2008, and it is hereby ORDERED that Plaintiffs' debarment is terminated immediately.

_____

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————— :
PHILIP GARLAND et al.,                           :
                                                 :
        Plaintiffs,                              :
                                                 :
        v.                                       :        Civil Action No. 07-1641 (RWR)
                                                 :
U.S. DEPARTMENT OF HOUSING AND  :
URBAN DEVELOPMENT et al.,                :
                                                 :
        Defendants.                              :
———————————————————————————

ORDER

AND NOW, this ___ day of _____, 2008, upon consideration of Defendants' Motion

for Summary Judgment, Plaintiffs' Opposition thereto and Cross-Motion for Summary

Judgment, and any responses and replies thereto, it is hereby ORDERED that Defendants'

Motion for Summary Judgment is DENIED.

It is further ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED.

Defendants' decision to debar Plaintiffs for a period for six (6) years from procurement and non-

procurement transactions with HUD is REVERSED and the case is REMANDED with

directions to provide Plaintiffs with an evidentiary hearing to contest the allegations presented by

the Government that are beyond the factual record created through the court proceedings

underlying Plaintiff Philip Garland's plea agreement and properly consider the mitigating factors

raised by Plaintiff if HUD chooses to proceed against Plaintiffs.

_____
UNITED STATES DISTRICT JUDGE